113 P.3d 713
Robert A. LOPEZ, Petitioner,
v.
The PEOPLE of the State of Colorado, Respondent.
No. 04SC150.
Supreme Court of Colorado, En Banc.
May 23, 2005.
As Modified on Denial of Rehearing June 27, 2005.1
 David S. Kaplan, Colorado State Public Defender, Cynthia Camp, Deputy State Public Defender, Andrea Manning, Deputy State Public Defender, Denver, for Petitioner.
 John W. Suthers, Attorney General, John D. Seidel, Assistant Attorney General, Criminal Justice Section, Appellate Division, Denver, for Respondent.
 Justice COATS concurs in the judgment only, and Justice KOURLIS and Justice RICE join in the concurrence.
 HOBBS, Justice.
 We granted certiorari to consider whether the rule of Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), invalidates the aggravated sentence imposed in this case.2 Defendant Robert A. Lopez pled guilty to possession of a controlled substance and received a two-year deferred judgment and sentence. During his deferral period, Lopez failed drug treatment, returned positive urine analysis tests for drugs, and killed another driver in a drunk driving incident. A jury convicted him of vehicular homicide and driving under the influence.
 The trial court sentenced Lopez for the possession offense after the vehicular homicide conviction. It aggravated Lopez's possession sentence under section 18-1.3-401(6), C.R.S. (2004),3 based on extraordinary aggravating circumstances that included the vehicular homicide convictions and Lopez's conduct during the period of deferred judgment on the possession offense.
 We review the conviction in this case because Lopez's case was pending on direct appeal when Blakely was announced and he is therefore entitled to its retroactive application. See United States v. Booker, ___ U.S. ___, ___, 125 S.Ct. 738, 769, 160 L.Ed.2d 621 (2005)(applying its Sixth Amendment and remedial holdings based on Apprendi and Blakely to all cases on direct review; quoting Griffith v. Kentucky, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987)("[A] new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final.")). We reject Lopez's contention that his aggravated sentence under section 18-1.3-401(6), C.R.S. (2004), is unconstitutional based on Apprendi and Blakely. We hold that section 18-1.3-401(6), properly applied, is constitutional. In light of Blakely, section 18-1.3-401(6) aggravated sentencing may rely on at least one of four kinds of facts: (1) facts found by a jury beyond a reasonable doubt; (2) facts admitted by the defendant; (3) facts found by a judge after the defendant stipulates to judicial fact-finding for sentencing purposes; and (4) facts regarding prior convictions.
 We expect that our holding today, implementing the Supreme Court's Blakely decision, will apply only to a limited number of cases. First, it will apply retroactively only to cases pending on appeal. Second, in the future, the legislature may enact a statute that responds to the United States Supreme Court's holdings in Apprendi, Blakely, and Booker by adopting a statute that does not place the trial court into the position of finding facts in order to aggravate sentences. Third, under the current statute, prosecutors arranging plea agreements, or trial courts considering guilty pleas, can insist that defendants admit to those facts potentially needed for aggravated sentencing. Fourth, the jury can be asked by interrogatory to determine facts potentially needed for aggravated sentencing. Fifth, and most important to the case before us, the full range of mitigated, presumptive and aggravated sentencing remains available under the statute if based on constitutionally-permissible facts, in accordance with Blakely.
 Section 18-1.3-401(6) does not mandate a restricted or increased sentencing range based on judicial fact-finding. Under that section, the existence of a constitutionally-permissible aggravating or mitigating fact widens the sentencing range on both the minimum and maximum ends, to a floor of one-half the presumptive minimum up to a ceiling of double the presumptive maximum. The sentencing judge then has full discretion to sentence within this widened range according to traditional sentencing considerations. However, if the trial judge must find additional facts in order to impose a sentence outside of the presumptive range, the rule of Blakely applies.
 The trial court based Lopez's aggravated sentence in part on the prior conviction facts in the jury's vehicular homicide verdict. Because Lopez's sentence was aggravated on the basis of these facts, we affirm the court of appeals' judgment but on grounds that are different from those expressed in that court's opinion. Accordingly, we uphold Lopez's sentence.
 I.
 Robert Lopez was arrested on October 3, 2000 and charged with possession of a schedule II controlled substance, cocaine (possession). See § 18-18-405(1)(a), 6 C.R.S. (2000). Possession in this instance is a class four felony. § 18-18-405(2)(a)(I). The presumptive sentence for a class four felony is two to six years of incarceration and three years of mandatory parole. § 18-1-105(1)(a)(V)(A), 6 C.R.S. (2000).
 Lopez entered a plea agreement with the prosecution in which he pled guilty to possession and received a deferral of his judgment and sentence for two years. Lopez initialed plea documents that listed his "presumptive range" sentence as two to six years plus three years of mandatory parole, and listed his "minimum sentence" as one year and his "maximum sentence" as twelve years. This minimum and maximum reflect the trial judge's discretion to decrease or increase the felony sentence beyond the presumptive range based on the presence of extraordinary mitigating or aggravating circumstances under section 18-1.3-401(6), C.R.S. (2004).
 In his Motion and Stipulation for Supervised Deferred Judgment and Sentence, Lopez stated that he was aware of the following conditions to his deferral:
3.(a) the defendant shall not commit any criminal offense against the United States of America, the State of Colorado or any other jurisdiction;
....
(d) the defendant shall refrain from use of alcohol, and any unlawful use or possession of controlled substances or have any other dangerous or abusable drug without a prescription;
....
(g) the defendant shall satisfy any other conditions reasonably related to his/her rehabilitation and the purpose of this supervisory period, as ordered by the Court;
....
5. The District Attorney may make application for entry of judgment and imposition of sentence at any time within the term of the deferred judgment ... upon a breach by the defendant of any of the conditions set forth in this stipulation....
 Lopez signed a written Crim. P. 11 advisement that included the following paragraph:
I know that if I plead guilty to a felony, I may be sentenced to the custody of the Department of Corrections.... I know that if the judge found extraordinary or sentence-enhancing circumstances in my case, I could be sentenced to any term from the minimum to the maximum.... I also know that if the judge does not find extraordinary or sentence-enhancing circumstances, I would be sentenced to a definite term within the presumptive range for each offense.
 The factual basis for Lopez's plea agreement was the probable cause affidavit and the supplemental presentence report. Neither of these documents is in the record, nor does the record indicate whether Lopez admitted to the facts contained in these documents. At the hearing on his plea agreement, the judge asked how Lopez wanted to plead to "unlawfully, feloniously, and knowingly possess[ing] a Schedule Two controlled substance, to wit cocaine," and Lopez answered "[g]uilty."
 Lopez's deferral period began December 12, 2000. The district court judge told Lopez that "I think you need an inpatient [drug] program at the moment. But if you can demonstrate to me that ... your [urine analysis tests (UAs)] are going to be clean, I won't send you there." Lopez was assigned to supervision during his deferral period.
 Lopez also appeared before the drug court. The magistrate stated that a place in the inpatient drug treatment would be reserved for Lopez in the event that his UAs were not clean. The magistrate gave Lopez his oral plea advisement and accepted the plea agreement.
 The record indicates that Lopez returned more than one positive, or "hot," UA during the deferral period. The record also indicates that Lopez was enrolled in the drug court inpatient treatment program for approximately three months after these hot UAs, but was dismissed from treatment as unsuccessful.
 On March 4, 2001, Lopez was arrested for driving his car into another passenger vehicle and killing the driver, Sally Tinoco. Lopez had been drinking. Lopez pled not guilty to all the charges for the vehicular offense and was tried to a jury.
 The jury returned verdicts of guilty for: Vehicular Homicide—Reckless Driving, see section 18-3-106(1)(2)(a), 6 C.R.S. (2001);4 Driving Under the Influence and Driving with Excessive Alcohol Content, see section 42-4-1301(1)(f), (2)(a), (2)(c), 11 C.R.S. (2001);5 and Reckless Driving, see section 42-4-1401(1), 11 C.R.S. (2001).6 The prosecution filed a motion to revoke Lopez's deferred possession judgment and sentence in light of the vehicular homicide conviction. Lopez was returned to the district court for sentencing on the vehicular homicide conviction and the deferred possession judgment.
 At the sentencing hearing, the court stated that it had reviewed several documents: a report from the Community Corrections Board rejecting Lopez from consideration for parole; "an information sheet from the probation office[;] ... a presentence report[;]... a variety of letters[;] and ... both the vehicular homicide file and the file from drug court."
 Defense counsel offered mitigating evidence, including facts relating to Lopez's work history and his lack of prior convictions. The prosecutor introduced aggravating evidence, consisting of testimony by Mrs. Tinoco's family members and evidence of Lopez's drug treatment failures during his deferral period and his history of driving and drug problems.
 The trial court engaged in a lengthy discussion on the record before imposing sentences. First, the court examined the history of the drug court and its purposes. The court stated that "the purpose of [the drug court and its treatment options] is to take a person who may have an addiction problem, treat that problem and resolve it" and that this "effort on the part of the Court was rejected by Mr. Lopez in a most serious and tragic way."
 Next, the court found a relationship between the original drug possession charge and the vehicular homicide incident involving alcohol, suggesting a pattern of conduct: "Mr. Lopez, while under a deferred judgment, while having failed at treatment [for one drug problem], then uses controlled substances—alcohol.... And then he chooses to violate another one of our statutes, which is driving while under the influence of alcohol, and driving with an excessive amount of alcohol."
 Third, the court expressed apparent regret that Mr. Lopez was not charged with murder, suggesting that the available sentences for vehicular homicide were not sufficiently lengthy in light of the nature of the crime. The court noted that "[y]ou get drunk and you aim a vehicle at the world. That, by the way, ... is Murder One under extreme indifference."
 The court then stated that it would aggravate the sentence for the vehicular homicide. The court noted that the presumptive range for the class four felony is two to six years and that the range can be doubled upon a finding of "aggravated circumstances." See § 18-1.3-401(6), C.R.S. (2004). The court specifically listed two factors that supported the aggravated vehicular homicide sentence. First was the fact that Lopez "was under the deferred judgment supervision of the other case, and particularly, he was offered the opportunities for treatment to address his drug problems, whether it be cocaine or marijuana or alcohol.... He was required to take advantage of that opportunity." The second reason was based on the jury's finding of "not only driving under the influence, but also driving with an excessive amount of alcohol."
 The court then turned to the sentencing for the possession charge. The court considered the following factors. First, the court found that "we clearly have had [backsliding]. We've had a hot UA for marijuana, hot UA for cocaine, and then we had a jury finding of driving with excessive alcohol content and [a] jury finding of vehicular homicide." Second, the court stated "in one of the reports [from the various agencies involved] it says, The defendant scored a 9 on his ASUVS Driving Risk Profile, which indicates a high risk for driving." Third, the court found that the same report "indicates the history of drug and alcohol involvement, which goes back to the age of 12, as near as the Court can find." Fourth, the court emphasized that "[t]he Court tried to help [Lopez] with the problems. The Court tried to help the community with the problems. And in exchange for that, we have a member of the community who is now deceased." Fifth, the court opined that Mrs. Tinoco's death was "the death of a very important person" in the community.
 The court found that People v. Allen, 973 P.2d 620 (Colo.1999)(Allen I), provided the authority to aggravate the possession sentence without additional advisements or procedural requirements. The court concluded:
Therefore, I find aggravation to be the same aggravation; that is to say, driving with the excessive amount of alcohol, killing another person in a vehicular homicide incident, plus the failures at the treatment program, the hot UAs that had been given before the incident which underlies this action, so I'm finding additional grounds for a possession charge.
Based upon that, it is the judgment and sentence of this Court, that in the ... vehicular homicide [case], having found aggravation, that the defendant be sentenced to the Department of Corrections for a period of 12 years.
Based upon the plea that was entered in the [possession case], and based upon the aggravators that the Court has found here, the Court orders that the defendant be sentenced for the possession of cocaine to the Department of Corrections for the period of 12 years.
The Court orders that the two sentences be served consecutively.
 Lopez appealed his twelve-year possession sentence. People v. Lopez, 97 P.3d 223 (Colo.App.2004). The court of appeals first found that the sentence did not violate double jeopardy principles because sentencing for deferred judgment violations does not impose a new sentence. The court then found that the trial court has authority under section 18-1.3-401(6) and the deferred sentence statute to aggravate a previously imposed but deferred sentence. Third, the court found that the trial court was within its discretion to impose the aggravated sentence and made adequate findings on the record to support its sentence. Finally, the court briefly dismissed Lopez's argument that any facts used to increase his sentence must be admitted or tried to a jury under Apprendi. The court rejected this argument "for the same reasons set forth in People v. Allen, 78 P.3d 751 (Colo.App.2001)[ (Allen II)]."
 We granted certiorari and now affirm the court of appeals' judgment on other grounds, thus upholding the sentence in this case.
 II.
 We reject Lopez's contention that his aggravated sentence under section 18-1.3-401(6), C.R.S. (2004), is unconstitutional based on Apprendi and Blakely. We hold that, properly applied, section 18-1.3-401(6) is constitutional. In light of Blakely, section 18-1.3-401(6) aggravated sentencing may rely on at least one of four kinds of facts: (1) facts found by a jury beyond a reasonable doubt; (2) facts admitted by the defendant; (3) facts found by a judge after the defendant stipulates to judicial fact-finding for sentencing purposes; and (4) facts regarding prior convictions.
 Section 18-1.3-401(6) does not mandate a restricted or increased sentencing range based on judicial fact-finding. Under that section, the existence of a constitutionally-permissible aggravating or mitigating fact widens the sentencing range on both the minimum and maximum ends, to a floor of one-half the presumptive minimum up to a ceiling of double the presumptive maximum. The sentencing judge then has full discretion to sentence within this widened range according to traditional sentencing considerations. However, if the trial judge must find additional facts in order to impose a sentence outside of the presumptive range, the rule of Blakely applies.
 The trial court based Lopez's aggravated sentence in part on the prior conviction facts of the jury vehicular homicide verdict. Because Lopez's sentence was based on these facts, we affirm the court of appeals' judgment but on grounds that are different from those expressed in the court's opinion. Accordingly, we uphold Lopez's sentence.
 A. Standard of Review
 A trial court has broad discretion over sentencing decisions, and will not be overturned absent a clear abuse of that discretion. See People v. Watkins, 684 P.2d 234, 239 (Colo.1984). However, reviewing courts must pay particular attention to lower courts' applications of legal standards to the facts when defendants' constitutional rights are at stake. People v. Al-Yousif, 49 P.3d 1165, 1169 (Colo.2002) ("[A]ppellate courts have an enhanced role in examining a trial court's application of law to fact, particularly in the arena of constitutional rights."). Therefore, review of constitutional challenges to sentencing determinations is de novo. People v. Matheny, 46 P.3d 453, 462 (Colo.2002)(holding that "law application, which involves the application of the controlling legal standard to the facts established by the evidence and found by the trial court is a matter for de novo appellate review ... where constitutional rights are concerned").
 B. The Rule of Apprendi and Blakely
 The United States Supreme Court holds that, except for the fact of a prior conviction, facts supporting the increase of a sentence beyond the "statutory maximum" must be admitted by the defendant or tried to a jury and proved beyond a reasonable doubt, unless the defendant has specifically stipulated to judicial fact-finding. See Blakely v. Washington, 542 U.S. 296, ___, 124 S.Ct. 2531, 2541, 159 L.Ed.2d 403 (2004); Apprendi v. New Jersey, 530 U.S. 466, 489, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). Since the issuance of these cases, commentators and state courts have wrestled with the impact of the rule on state sentencing schemes that allow judges to increase sentences based on various factors that are not necessarily admitted by the defendant or found by a jury. See, e.g., Jon Wool & Don Stemen, "Aggravated Sentencing: Blakely v. Washington; Practical Implications for State Sentencing Systems," Policy and Practice Review 1 (Aug.2004); State v. Brown, 209 Ariz. 200, 99 P.3d 15 (2004)(finding sentence imposed beyond the presumptive range and in the "super-aggravated" range based on facts found by judge alone violated Blakely); State v. Rivera, 106 Hawai'i 146, 102 P.3d 1044 (2004)(finding sentence imposed under "indeterminate" sentencing scheme, in which the judge imposes sentencing floor and ceiling within statutory limits and parole board determines actual release date, consistent with Blakely); Smylie v. State, 823 N.E.2d 679 (Ind.2005)(finding mandatory aggravation of sentence by judge alone unconstitutional and therefore excising portions of statute).
 In Apprendi, the Court considered portions of New Jersey's sentencing statute. 530 U.S. at 468-69, 120 S.Ct. 2348. The defendant fired several shots into the home of an African-American family that had recently moved into a predominantly white neighborhood in Vineland, New Jersey. He pled guilty to two counts of second-degree possession of a firearm for an unlawful purpose, which is a second-degree offense, as well as one count of unlawful possession of an antipersonnel bomb. The statutory penalty for a second-degree offense in New Jersey is five to ten years.7
 A separate criminal statute, the "hate crime" law, provides for an extended term of imprisonment. The extended term can be imposed by a trial judge who finds by a preponderance of the evidence that the defendant committed the underlying crime with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation or ethnicity. The hate crime law provides for imprisonment between ten and twenty years.
 Based on testimony at a bench hearing on the issue of intent, the trial judge found by a preponderance of the evidence that the defendant had a racial intimidation purpose and therefore imposed an extended sentence of twelve years under the hate crime statute.
 The New Jersey Supreme Court found aggravated sentencing under the hate crime law valid, holding that "the Legislature simply took one factor that has always been considered by sentencing courts to bear on punishment and dictated the weight to be given that factor." State v. Apprendi, 159 N.J. 7, 731 A.2d 485, 494-95 (1999).
 On appeal, the United States Supreme Court found that the hate crime sentence enhancement functioned as an element of a greater offense rather than a traditional factor used in sentencing determinations. Apprendi, 530 U.S. at 476, 120 S.Ct. 2348. Thus, the Court found that the defendant was exposed to "certain pains" under the possession of a firearm statute and "additional pains" under the hate crime law. Id. The Court found that the jury trial right and the reasonable doubt standard must apply to facts underlying any potential penalty. Id.
 The Court stated its holding thus: "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490, 120 S.Ct. 2348. In determining which facts must be tried to the jury, "the relevant inquiry is one not of form, but of effect—does the required finding expose the defendant to a greater punishment than that authorized by the jury's guilty verdict?" Id. at 494, 120 S.Ct. 2348.
 The Court was careful to state that the ruling does not remove all discretion from sentencing judges:
nothing in this history [of sentencing procedures] suggests that it is impermissible for judges to exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment within the range prescribed by statute. We have often noted that judges in this country have long exercised discretion of this nature in imposing sentence within statutory limits in the individual case.
 Id. at 481, 120 S.Ct. 2348 (emphasis in original).
 In Blakely, the Supreme Court applied the rule of Apprendi to Washington's sentencing scheme. 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403. Blakely focused particularly on two lingering issues: (1) the definition of the "statutory maximum" sentence to which a defendant is exposed by a jury verdict or guilty plea; and (2) the distinction between elements of an offense, which must be tried to a jury, and sentencing factors, which need not be.
 The defendant in Blakely kidnapped his wife at gun point, bound her and put her in his truck, and drove from Washington to Montana. The defendant pled guilty to second-degree kidnapping involving domestic violence and use of a firearm. He did not admit to other relevant facts.
 In Washington, second-degree kidnapping is a class B felony. The statute provides that no person convicted of a class B felony can be sentenced to a term greater than ten years. The state's Sentencing Reform Act (Act) provides for "standard range" sentences that are determined by matching a score for the nature of the offender and a score for the nature of the offense and finding the intersecting slot on a matrix. See Blakely, 124 S.Ct. at 2535. A standard range sentence for second-degree kidnapping with a firearm is between forty-nine and fifty-three months. Id.
 Under the Act, a judge can impose a sentence above the standard range if he finds "substantial and compelling reasons" to do so. Id. Aggravating factors that justify a departure are left to the judge's discretion, but cannot take into account the facts that were used to determine the offender and offense scores for use of the matrix at the start. When a trial judge imposes a sentence beyond the standard range, he or she must set forth the findings of fact and conclusions of law that support this decision.
 The trial judge imposed an extraordinary sentence on Blakely in part because he found, after a bench hearing, that Blakely had acted with deliberate cruelty, one of the statutorily enumerated grounds for upward departure in domestic violence cases. Id. The trial judge imposed an aggravated sentence of ninety months, which was thirty-seven months greater than the top of the standard range and thirty months less than the absolute statutory cap of ten years. Id. at 2535-36.
 The United States Supreme Court applied the rule of Apprendi. As to the definition of the statutory maximum sentence for a particular crime, the Court further explained that it is "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." 124 S.Ct. at 2537 (emphasis in original). Thus, "[w]hen a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts `which the law makes essential to the punishment,' and the judge exceeds his proper authority." Id. at 2538 (internal citations omitted). The Supreme Court applied Apprendi, despite the fact that the aggravated sentence imposed on Blakely was well below the ten-year absolute cap for class B felonies set by the Washington statute. See id. at 2535.
 These rulings strongly suggest that the statutory maximum sentence is not necessarily the greatest term authorized by the state legislature. Rather, it is the longest sentence authorized by the applicable statute and the particular facts validly before the judge in the case.
 On the distinction between sentencing factors and elements of crimes, the Court impliedly rejected any remaining difference for the purposes of the jury trial requirement. See Blakely, 124 S.Ct. at 2539 (rejecting the argument that "the jury need only find whatever facts the legislature chooses to label elements of the crime, and that those it labels sentencing factors—no matter how much they may increase the punishment—may be found by the judge"). Instead, the Court emphasized that the Apprendi rule must be strictly applied to "ensur[e] that the judge's authority to sentence derives wholly from the jury's verdict." Id.
 Three other aspects of Blakely are important to our analysis. First, the Court explained that the determination that certain facts are "substantial and compelling" under the Washington statute is not merely a question of law for the judge. The judge "cannot make that judgment without finding some facts to support it beyond the bare elements of the offense." Id. at 2538 n. 8. Therefore, those underlying facts must comply with the Sixth Amendment before any legal judgment can be made.
 The Court also explained that its holding did not necessarily find all "determinate"8 sentencing schemes unconstitutional but merely showed how they can be implemented in harmony with the Sixth Amendment.9 Id. at 2541.
 Finally, the Blakely Court effectively rejected any distinction, for the purposes of Sixth Amendment analysis, between mandatory or discretionary aggravated sentencing systems based on judicial fact-finding. Under either system, facts supporting increased sentences are subject to the rule. The Court stated that "[w]hether the judicially determined facts require a sentence enhancement or merely allow it, the verdict alone does not authorize the sentence." Id. at 2538 n. 8 (emphasis in original).
 In 2005, the Court applied the principles of Apprendi and Blakely to the mandatory provisions of the Federal Sentencing Guidelines and found them unconstitutional as far as they required judges to find facts by a preponderance of the evidence for the imposition of aggravated sentences. Booker, ___ U.S. ___, 125 S.Ct. 738, 160 L.Ed.2d 621. In Booker, the Court re-emphasized the importance of the purely functional definition of a statutory maximum sentence: "the maximum [sentence] authorized by the facts established by a plea of guilty or a jury verdict." Id. at 756.
 After this line of cases, there are at least four types of factors that are clearly valid for use in aggravated sentencing. These types of factors comply with the Apprendi-Blakely rule and the Sixth Amendment. First, the defendant might admit to the facts. Blakely, 124 S.Ct. at 2537 (statutory maximum is, in part, the sentence authorized by the facts admitted by the defendant). Second, the jury might find the facts, as reflected in its verdict. Id. (statutory maximum also measured by facts contained in a jury verdict); People v. Leske, 957 P.2d 1030, 1044 (Colo.1998)(facts related to the elements of the offense may serve as factors for aggravating a sentence as long as they are sufficiently linked to the particular defendant and the particular crime). Third, the defendant might stipulate to judicial fact-finding for sentencing purposes. Blakely, 124 S.Ct. at 2541 ("the State is free to seek judicial sentence enhancements so long as the defendant ... consents to judicial fact-finding"). Fourth, the fact of a prior conviction is expressly excepted from the jury trial requirement. Apprendi, 530 U.S. at 490, 120 S.Ct. 2348 ("[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"); Almendarez-Torres v. United States, 523 U.S. 224, 243, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998)("recidivism ... is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence").
 Although there is some doubt about the continued vitality of the prior conviction exception,10 we conclude that it remains valid after Blakely. See Booker, 125 S.Ct. at 756 ("we reaffirm our holding in Apprendi: Any fact (other than a prior conviction), which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt")(emphasis added); United States v. Orduno-Mireles, 405 F.3d 960, 2005 WL 768134 *2 (11th Cir. Apr.6, 2005)("Put another way, because the prior-conviction exception remains undisturbed after Booker, a district court does not err by relying on prior convictions to enhance a defendant's sentence."). We adopt a useful shorthand from the Arizona Court of Appeals; facts admitted by the defendant, found by the jury, or found by a judge when the defendant has consented to judicial fact-finding for sentencing purposes we call "Blakely-compliant," and prior conviction facts we call "Blakely-exempt." State v. Aleman, 210 Ariz. 232, 109 P.3d 571, 580 (Ariz.App.2005).
 C. Colorado's Sentencing Statute—Section 18-1.3-401(6) and the Presence of Extraordinary Mitigating or Aggravating Circumstances
 Colorado's sentencing system provides for separate classes of offenses and different sentencing options in a
 complex scheme of interlocking statutes, premised upon the segregation of felony offenses into six levels or classes, each with its own presumptive sentencing range. Under various circumstances, courts are permitted to sentence convicted felons in a mitigated range, as little as half the minimum presumptive sentence, or in an aggravated range, as great as twice the maximum presumptive sentence. Likewise, under various circumstances, courts may be limited to specified portions of the statutorily prescribed range for a given class of felony.
 Martinez v. People, 69 P.3d 1029, 1031-32 (Colo.2003)(internal citations omitted).
 This case does not concern the state's separate statutory sentencing provisions, such as special provisions for habitual offenders or special offenders. See, e.g., §§ 18-1.3-801, C.R.S. (2004)(habitual offender statute); XX-XX-XXX, C.R.S. (2004)(special offender statute). Instead, in this case we consider only the general sentencing statute, section 18-1.3-401, C.R.S. (2004), and particularly section 18-1.3-401(6).
 Colorado's general sentencing statute provides four ways a sentence might be increased over the presumptive range. First, the minimum sentence must be raised to "at least the midpoint in the presumptive range" and the judge may sentence up to "twice the mandatory maximum term authorized in the presumptive range" if one of several offender-based, enumerated extraordinary aggravating circumstances are present. § 18-1.3-401(8)(a), (9). For example, this range applies if:
(I) The defendant is convicted of a crime of violence under section 18-1.3-406;
(II) The defendant was on parole for another felony at the time of the commission of the felony;
(III) The defendant was on probation or was on bond while awaiting sentencing following revocation of probation for another felony at the time of the commission of the felony;
(IV) The defendant was under confinement, in prison, or in any correctional institution as a convicted felon, or an escapee from any correctional institution for another felony at the time of the commission of a felony.
 § 18-1.3-401(8)(a).
 Second, the floor must again be raised to the midpoint of the presumptive range and a sentence up to double the maximum of the presumptive range is authorized if a certain type of crime is committed. § 18-1.3-401(8)(d). For example, if defendants are convicted of class two or three felony child abuse or class three or four felony vehicular homicide during immediate flight from another felony, the court must sentence within the new range. § 18-1.3-401(8)(d)(I), (8)(g).
 A third way in which a sentence can be increased is when the crime committed is one that the General Assembly has found "present[s] an extraordinary risk of harm to society." § 18-1.3-401(10). For these crimes, the maximum penalty in the presumptive range must be increased by a specific number of years and the minimum is not affected. For example, if a particular class three felony is on the statutory list, the maximum term in the presumptive range "shall be increased by four years." § 18-1.3-401(10)(a). The crimes that the General Assembly has included on this list of extraordinary risk crimes include:
(IX) Aggravated robbery ...;
(X) Child abuse ...;
(XI) Unlawful distribution, manufacturing, dispensing, sale, or possession of a controlled substance with the intent to sell, distribute, manufacture or dispense ...;
(XII) Any crime of violence....
 § 18-1.3-401(10)(b).
 The fourth type of sentencing, and the only one at issue in this case, is departure from the presumptive range based on the presence of extraordinary aggravating or mitigating circumstances under section 18-1.3-401(6):
In imposing a sentence to incarceration, the court shall impose a definite sentence which is within the presumptive ranges set forth in subsection (1) of this section unless it concludes that extraordinary mitigating or aggravating circumstances are present, are based on evidence in the record of the sentencing hearing and the presentence report, and support a different sentence which better serves the purposes of this code with respect to sentencing, as set forth in section 18-1-102.5. If the court finds such extraordinary mitigating or aggravating circumstances, it may impose a sentence which is lesser or greater than the presumptive range; except that in no case shall the term of sentence be greater than twice the maximum nor less than one-half the minimum term authorized in the presumptive range for the punishment of the offense.
 § 18-1.3-401(6).
 In sentencing under section 18-1.3-401(6), a judge may consider factors related to the offender and the offense. The sentencing judge may consider as extraordinary aggravating circumstances facts that tend to establish an element of an offense as long as they are clearly related to the particular defendant and the circumstance of the crime. Leske, 957 P.2d at 1044; For example, in Leske, we determined that the aggravated sentence based on the nature of the victim and her relationship to the defendant was permissible because it was not based "upon `generic' circumstances common to all child sexual assault crimes." Id. at 1045. When a judge imposes an aggravated or mitigated sentence under the authority of section 18-1.3-401(6), he or she must "make specific findings on the record of the case, detailing the specific extraordinary circumstances which constitute the reasons for varying from the presumptive sentence." § 18-1.3-401(7).
 Section 18-1.3-401 requires enhanced sentences in certain cases and authorizes them in other cases. We have interpreted the statute to:
mandate a sentence within the aggravated range whenever any of the extraordinary aggravating circumstances specifically enumerated... are present, and to permit a sentence outside the presumptive range whenever any extraordinary mitigating factors, or any extraordinary aggravating factors not specifically listed ... exist.
 People v. Dist. Court, 713 P.2d 918, 922 (Colo.1986)(emphasis in original).
 We have not characterized section 18-1.3-401(6) sentencing as a legally distinct procedure from presumptive range sentencing. For example, the fact that a judge must specifically record the extraordinary aggravating circumstances considered does not necessarily make section 18-1.3-401(6) sentencing distinct and separate from any other sentencing decision. People v. Walker, 724 P.2d 666, 668 (Colo.1986)(noting that the legislature requires a trial court to explain its reasons for imposing any sentence, whether within or beyond the presumptive range, for purposes of appellate review, fostering rationality and consistency, and providing information to defendants and correctional authorities). Also, some kinds of factors a judge may consider for section 18-1.3-401(6) sentencing are the same kinds of factors that are considered in imposing a sentence in the presumptive range. § 18-1.3-401(1)(b)(I)("the court shall consider the nature and elements of the offense, the character and record of the offender, and all aggravating or mitigating circumstances surrounding the offense and the offender").
 We have called our sentencing system a "spectrum beginning at one-half the presumptive minimum and extending to twice the presumptive maximum." People v. Phillips, 652 P.2d 575, 581 (Colo.1982)(Lohr, J., specially concurring and Erickson, Dubofsky and Quinn, JJ., joining in the concurrence). This "spectrum" of sentencing effectuates an important legislative intention. In the context of the determinate sentencing system, the General Assembly intended to provide trial judges with discretion that would maximize defendants' chances for a fair and individualized sentence. Id. The flexibility of presumptive and mitigated or aggravated sentencing effectuates the legislative intent by allowing judges to weigh the "multitude of [relevant] factors" in arriving at an individualized and fair sentence. Id.; see also Leske, 957 P.2d at 1044-45 (the General Assembly intended the trial judge to maintain discretion to distinguish between ordinary and extraordinary factors and "exercise its independent judgment" in making that distinction).
 D. Application to This Case
 The prosecution invites us to construe Colorado's general sentencing statute as comprising one simple range, from one-half to double the presumptive range. Under this view, the facts used to impose a sentence anywhere within this range would not fall under the Sixth Amendment requirement of a jury determination because the jury verdict or plea agreement convicting the defendant of the crime would immediately authorize the entire range of sentencing.
 The defense invites us, instead, to carefully consider whether the facts used as extraordinary aggravators in this case were permissibly considered under Apprendi and Blakely.
 After close analysis of Apprendi, Blakely, and Colorado's statute, we are not persuaded by the prosecution's argument. We determine that the functional analysis required by those rulings shows that, under section 18-1.3-401(6), the trial judge must impose a sentence within the presumptive range unless he or she engages in the extraordinary aggravating or mitigating circumstances analysis. If that analysis requires judicial fact-finding to which the defendant has not stipulated, then the rule of Blakely applies and any additional facts used to aggravate the sentence must be Blakely-compliant or Blakely-exempt. Thus, we need not find that section 18-1.3-401(6) aggravated sentencing is unconstitutional because aggravated sentences can be based on Blakely-compliant or Blakely-exempt facts.
 In our application of the Apprendi-Blakely rule to the aggravated sentence in this case, we first consider the effect of Lopez's plea advisement on the aggravation of his sentence.11 Then, we consider the prosecution's arguments about the nature of section 18-1.3-401(6) aggravated sentencing in light of Apprendi and Blakely. Finally, we consider whether the trial court in this case permissibly based Lopez's aggravated sentence on prior conviction or uncharged conduct factors.
 1. Effect of Plea Agreement
 Lopez's Crim. P. 11 advisement notified him that he could be sentenced to twelve years if the judge found extraordinary aggravating circumstances present in his case. Lopez arguably received and agreed to sufficient notice that he was subject to an aggravated sentence. However, such notification alone does not satisfy the constitutional principles at issue in Blakely.
 The Blakely rule is concerned specifically with defendants' constitutional protections in criminal proceedings, particularly the right to a jury determination, beyond a reasonable doubt, that facts exist that expose the defendant to criminal penalties. The defendant must be protected from a sentence that "balloon[s]" based on, for example, "facts extracted after trial [or plea] from a report compiled by a probation officer" which arise "with no warning in either his indictment or plea." Blakely, 124 S.Ct. at 2542. Thus, a defendant's due process rights are not sufficiently protected when he or she is informed that the sentence may be aggravated; the defendant must have the opportunity to admit in court proceedings or, in the alternative, to dispute to a jury, the actual facts on the basis of which the sentence can be aggravated. See Smylie, 823 N.E.2d at 684-85 (rejecting the state's argument that the statute sufficiently notified defendants that their sentences could be aggravated; to the contrary, the "increase was `unexpected' ... [because] the aggravators used to support a departure from the presumptive [were] not charged in the indictment").
 Defendants may waive their Apprendi and Blakely rights. Blakely, 124 S.Ct. at 2541. However, to accomplish valid waivers, they must either admit to the relevant facts supporting the aggravated sentence or stipulate to judicial fact-finding for sentencing purposes.12See id. A guilty plea waives the right to a jury trial on the issue of guilt but is not a stipulation to judicial sentencing based on facts not admitted in the plea. Blakely holds that the guilty plea is not an implied admission of facts for the purpose of aggravated sentencing. See Wool, "Legal Considerations for State Sentencing Systems" at 9 (a "bare factual admission is not likely to suffice" to waive the jury trial right; similarly, a "simple waiver of one's jury right with regard to enhancing facts will not serve to establish those facts").
 Therefore, Lopez's plea agreement in this case, although notifying him of the possibility of a twelve-year sentence and admitting to certain facts, does not authorize the judge's use of other facts Lopez did not admit to aggravate the sentence.
 2. Colorado Sentencing— Separate Ranges
 We determine that the prosecution's attempt to characterize Colorado's scheme as a "simple range" system is foreclosed or rejected by Apprendi and Blakely.
 In support of its "simple range" argument, the prosecution relies on the Phillips characterization of Colorado's sentencing scheme as "a spectrum beginning at one-half the presumptive minimum and extending to twice the presumptive maximum." 652 P.2d at 581. The prosecution also argues that the determination that particular facts are extraordinary mitigating or aggravating circumstances is a legal determination that must be made by the trial court. This must be so, the prosecution argues, because the same facts that support a presumptive range sentence may be legally characterized as extraordinary to support an aggravated sentence. Furthermore, the prosecution points out that the abuse of discretion standard of review applied to sentencing decisions shows that these determinations are issues of law and not fact.
 First and most importantly, despite the language in Phillips which characterizes sentencing judges' options as one inclusive "spectrum," it is apparent from Blakely that the necessary inquiry into the sentencing system is one of functionality, not labeling. The Supreme Court defines the "statutory maximum," for Sixth Amendment purposes, as "the maximum sentence a judge may impose solely on the basis of facts reflected in the jury verdict or admitted by the defendant." Blakely, 124 S.Ct. at 2538 (emphasis in original); see also Booker, 125 S.Ct. at 756 (statutory maximum is "the maximum authorized by the facts established by a plea of guilty or a jury verdict").
 When we examine the section 18-1.3-401(6) provision for aggravated sentencing, we must consider the Supreme Court's formulation of "statutory maximum" for Sixth Amendment purposes. Rather than looking only to the highest sentences in the "aggravated range" authorized by this statute as the "statutory maximum," we must examine the trial court's role. Section 18-1.3-401(6) aggravated sentencing results in imposition of a sentence that is within the presumptive range, unless the court engages in the aggravating circumstances analysis. In some instances, this analysis may involve additional fact-finding by the trial judge. If it does, the rule of Blakely applies. Labeling Colorado's system as a "simple range" system ignores this critical point.
 Furthermore, we are not persuaded by the prosecution's argument that the trial court must make the purely legal determination that certain facts are extraordinary mitigating or aggravating circumstances. The Supreme Court expressly rejected this argument in Blakely. The focus of the Sixth Amendment inquiry is on the process of finding those facts and whether it sufficiently complied with the defendant's constitutional jury trial protections. Washington State made a similar argument in support of its statute. Blakely, 124 S.Ct. at 2538 n. 8. The Court rejected the argument, explaining that the Washington judge's legal determination that certain facts present a "compelling" ground for an aggravated sentence does not change the analysis because the judge "cannot make that judgment without finding some facts to support it beyond the bare elements of the offense." Id.13 Any such facts must be Blakely-compliant or Blakely-exempt. The subsequent determination that those facts are extraordinary aggravators is a legal determination that remains in the discretion of the trial court as long as it is based on permissible facts. See Watkins, 684 P.2d at 238.
 We also note that section 18-1.3-401(6) does not mandate increased sentences based on extraordinary aggravating factors, but authorizes them. This distinction has no effect on the Blakely analysis because the Supreme Court rejects this feature as one that authorizes judicial fact-finding for aggravated sentencing. See 124 S.Ct. at 2538 n. 8 (clarifying that mandatory and discretionary aggravated sentencing systems that allow for judicial fact-finding are no different for purposes of the rule in the case).
 For these reasons, we reject the prosecution's characterization of section 18-1.3-401(6) sentencing as a "simple range." Our statute includes the possibility of aggravated range sentences based on facts that are not Blakely-compliant or Blakely-exempt; sentences that are outside the statutory maximum, as defined by Blakely, in violation of the Sixth Amendment. Therefore, it cannot be termed a "simple range" system.
 3. The Constitutionality of Section 18-1.3-401(6)
 Our conclusion on the prosecution's argument requires us to consider the constitutionality of section 18-1.3-401(6). We must construe statutes to avoid constitutional conflicts if possible. People v. Holmes, 959 P.2d 406, 415 (Colo.1998). We have concluded that section 18-1.3-401(6) can be applied unconstitutionally in that it allows for sentencing beyond the statutory maximum—as defined in Apprendi and Blakely, and as further defined by Booker—based on facts that are not Blakely-compliant or Blakely-exempt. Nevertheless, this conclusion does not require a finding that the provision is unconstitutional. As we have discussed, section 18-1.3-401(6) aggravated sentencing may also be based on constitutionally authorized facts, depending on the circumstances of a particular case.
 Since Blakely was issued, five other state supreme courts have considered statutes functionally similar to ours. See Brown, 99 P.3d at 17-18 (Arizona statute states that defendant shall receive a presumptive range sentence and that the sentence may be increased if the trial judge finds enumerated aggravating circumstances from any evidence before or during trial); Smylie, 823 N.E.2d at 683 (Indiana statute "requires a given presumptive term for each class of crimes, except when the judge finds aggravating or mitigating circumstances"); State v. Shattuck, 689 N.W.2d 785, 786 (Minn.2004)(Minnesota statute requires imposition of presumptive sentence unless court finds "aggravating factors"); State v. Dilts, 337 Or. 645, 103 P.3d 95, 99 (2004)(Oregon statute states that "the sentencing judge shall impose the presumptive sentence ... unless the judge finds substantial and compelling reasons to impose a departure")(emphasis and alteration in original); State v. Hughes, 110 P.3d 192, 2005 WL 851137 *5 (Wash. Apr.14, 2005)(Washington statute provides matrix for determination of standard range sentence and exceptional sentence statute allows imposition of sentence outside the standard range if the judge finds "substantial and compelling reasons").
 In Smylie, the Indiana court found that its sentencing system "runs afoul of the Sixth Amendment" because it "mandates both a fixed term and permits judicial discretion in finding aggravation or mitigating circumstances." 823 N.E.2d at 685 (emphasis in original). The court found that Blakely and the Sixth Amendment required that the judicial fact-finding portions of the statute be excised and the statute "modified to require jury findings on facts in aggravation." Id.
 The Minnesota court also considered excising portions of its statute, but has not yet come to a conclusion on that issue. The court found that upward departures based on judicial fact-finding are unconstitutional and requested further briefing on the proper remedies, including excision. Shattuck, 689 N.W.2d at 786. As of this writing, that court has not issued an opinion on the remedy.
 The Oregon, Washington, and Arizona courts did not invalidate or excise their statutes, but vacated the particular sentences imposed. The Arizona court limited itself to answering the question before the court— whether the "statutory maximum" was the presumptive or the aggravated sentence. The court found that the plea proceedings only authorized the presumptive term. Brown, 99 P.3d at 18. The court declined to consider other implications of Blakely in that opinion, determining that "the best approach is to resolve any such questions in this dynamic area of the law in the context of a case in which the relevant issue is squarely presented, properly briefed, and addressed by the courts below." Id. at 18-19.
 Similarly, the Oregon court determined that "the fact that the sentencing guidelines may be applied unconstitutionally, as they were in this case, does not mean that we must reject the sentencing guidelines themselves as unconstitutional." Dilts, 103 P.3d at 100. Instead, the court found only that "the sentencing guidelines were applied unconstitutionally to defendant" because the aggravated sentence was imposed based on judicial findings. Id. The court concluded that its sentencing system is "permissible if [it is] implemented `in a way that respects the Sixth Amendment.'" Id. (internal citations omitted).
 The Supreme Court of Washington also found that its enhanced sentencing provisions could be validly utilized when based on constitutionally permissible factors. Hughes, 110 P.3d 192, 200. ("there is at least one way in which RCW 9.94A.535 can be applied constitutionally, [so] it cannot be declared facially unconstitutional"). In Hughes, the court also held that an aggravated sentence relying on both valid and invalid factors can stand if the court is satisfied that the valid factors are sufficient to support the sentence. Id. at 201. Accordingly, the court individually considered the factors used to aggravate the sentences at issue in that case. Because the court found that all the factors were invalid under Blakely and held that it would not apply a harmless error standard to Blakely errors, it vacated the sentences. Id. at 202-08.
 Colorado's statutory sentencing system is functionally similar to Arizona's, Oregon's, and Washington's; it provides for a presumptive range and allows a judge to sentence outside that range if he or she finds extraordinary aggravating circumstances. Our sentencing statute is also similar to those state statutes because section 18-1.3-401(6) aggravated sentences can be imposed constitutionally if based on Blakely-compliant or Blakely-exempt facts.
 These facts may be present in the record of a sentencing hearing as section 18-1.3-401(6) requires. Therefore, we determine that section 18-1.3-401(6) can be applied constitutionally. Colorado courts must carefully consider different types of aggravating factors used in section 18-1.3-401(6) aggravation in accordance with the Supreme Court's Sixth Amendment case law.14
 4. Aggravating Factors— Prior Convictions and Uncharged Conduct
 In this case, the trial court aggravated the possession sentence based on two categories of factors. First, the court aggravated the sentence for Lopez's "driving with the excessive amount of alcohol, [and] killing another person in a vehicular homicide incident." Both of these facts are reflected in the jury's verdicts from the vehicular homicide trial. We find that the prior conviction facts adequately support the aggravated sentence in this case. Second, the court aggravated the sentence due to "the failures at the treatment program, [and] the hot UAs that had been given" during the deferral period. Because the prior conviction facts adequately support the aggravated sentence, we do not analyze the uncharged conduct constituting the second factor.
 a. The Vehicular Homicide Prior Convictions
 As stated above, for aggravated sentencing purposes, the Supreme Court has excepted the finding of prior conviction facts from the Sixth Amendment jury requirement.
 Prior conviction facts are Blakely-exempt in large part because these facts have been determined by a jury beyond a reasonable doubt or admitted by the defendant in a knowing and voluntary plea agreement. Thus, as long as the prior proceedings were not constitutionally flawed, the defendant's Sixth Amendment rights were adequately protected in the prior conviction proceeding. See Jones v. United States, 526 U.S. 227, 249, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999)("a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees").
 Whether prior convictions are extraordinary aggravating circumstances is a determination made by the judge alone. See Blakely, 124 S.Ct. at 2538 n. 8 (the sentencing judge's legal determinations must be based on properly received facts); see also, Watkins, 684 P.2d at 238 (abuse of discretion standard applied to sentencing determinations by sentencing judges). The critical point is that the underlying fact in a prior conviction analysis—that the defendant was previously convicted of certain crimes—is one that has passed through the safeguards of the jury right or plea proceedings, and sentencing judges may consider these facts without further jury involvement.
 In this case, the trial court could permissibly aggravate Lopez's possession sentence based on his convictions in the vehicular homicide case. After lengthy discussion of Lopez's conduct during his deferral period, the court stated that he was aggravating the possession sentence for Lopez's "driving with the excessive amount of alcohol, [and] killing another person in a vehicular homicide incident." Lopez was convicted by a jury of both of these acts.
 The unique facts of this case present some question as to whether the vehicular homicide convictions are "prior convictions" with regard to the possession sentencing. The vehicular homicide itself occurred after the possession offense. However, the convictions for the homicide were entered before the possession sentencing.
 We determine that, under the circumstances of this case, the vehicular homicide convictions are proper Blakely-exempt aggravating factors for the possession sentence because the facts are reflected in a jury's verdict that was entered before the possession sentence was imposed.
 The trial court determined the prior convictions to be extraordinary circumstances that supported an aggravated sentence for the possession conviction. Under the Apprendi-Blakely rule, this determination could properly rest on the prior conviction facts. The legal judgment that these facts are extraordinary aggravating circumstances to the possession offense is within the trial judge's discretion. Leske, 957 P.2d at 1044-45; Watkins, 684 P.2d at 238.
 In imposing sentence, the trial court must consider the nature and elements of the offense, the character and record of the offender, and all aggravating or mitigating circumstances, which include: "unusual aspects of the defendant's character, past conduct, habits, health, age, the events surrounding the crime, pattern of conduct which indicates whether [the defendant] is a serious danger to society, past convictions, and possibility of rehabilitation." Leske, 957 P.2d at 1043 (internal citations omitted; alteration in original); § 18-1.3-401(1)(b)(I), C.R.S. (2004). The fact that Lopez drank to excess and drove recklessly, killing Mrs. Tinoco, is clearly relevant to unusual aspects of his character, his habits, and the danger he poses to society. See Leske, 957 P.2d at 1043. The fact that this conduct occurred during the supervised deferral is relevant to his susceptibility to rehabilitation. See Allen I, 973 P.2d at 623-24 (sentence aggravated on basis of conduct during probation). We therefore determine that the aggravated sentence in this case was imposed constitutionally where the trial court deemed Blakely-exempt prior conviction facts to be extraordinary aggravating circumstances in this case. See Watkins, 684 P.2d at 238 (abuse of discretion standard applied to trial court sentencing determinations).
 b. Trial Judges' Discretion under Section 18-1.3-401(6)
 One Blakely-compliant or Blakely-exempt factor is sufficient to support an aggravated sentence. A sentencing judge can constitutionally consider any fact that was admitted by the defendant, found beyond a reasonable doubt by a jury, found by a judge after the defendant assented to judicial fact-finding for sentencing purposes, or related to a prior conviction. Under state law, that constitutionally permissible fact opens a wider sentencing range under section 18-1.3-401(6).
 The legislature may not require judges to impose enhanced sentences based on constitutionally impermissible judicial fact-finding. See Booker, 125 S.Ct. at 757 ("it is no longer possible to maintain the judicial fact-finding that Congress thought would underpin the mandatory Guidelines system"). Section 18-1.3-401(6) does not mandate a restricted or increased sentencing range based on judicial fact-finding. Rather, under that section, the existence of a constitutionally-permissible aggravating or mitigating fact widens the sentencing range on both the minimum and maximum ends, to a floor of one-half the presumptive minimum up to a ceiling of double the presumptive maximum. The sentencing judge then has full discretion to sentence within this widened range according to traditional sentencing considerations. See Leske, 957 P.2d at 1043. Sentencing within this widened range under section 18-1.3-401(6), based on Blakely-compliant or Blakely-exempt factors, is both constitutionally and statutorily sound even if the sentencing judge also considered factors that were not Blakely-compliant or Blakely-exempt.
 One such valid factor supporting a discretionary aggravated sentence within the broadened section 18-1.3-401(6) range satisfies constitutional and statutory requirements for the protection of defendants. Thus, we do not consider whether "the failures at the treatment program, [and] the hot UAs that had been given" were proper aggravators in this case. See Leske, 957 P.2d at 1043 ("where the sentencing court finds several factors justifying a sentence in the aggravated range, only one of those factors need be legitimate to support the sentencing court's decision")(internal citations omitted).
 III.
 Accordingly, we affirm the court of appeals' judgment on other grounds and uphold the sentence in this case.
 Justice COATS concurs in the judgment only, and Justice KOURLIS and Justice RICE join in the concurrence.
 Justice COATS, concurring in the judgment only.
 Although the majority affirms the defendant's 12-year sentence in this case, it does so only by eviscerating the presumptive sentencing regime under which we have operated for more than a quarter century. Upholding the facial validity of a statute is of little consolation if all but a sliver of its authorized applications are declared unconstitutional. Today's decision effectively cuts in half the highest prison sentence available to courts in the vast majority of felony cases. As the majority makes clear, it considers its holding dictated by the United States Supreme Court's decision in Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). Because I believe the majority misconstrues Blakely and therefore mischaracterizes its application to the statutory sentencing scheme of this jurisdiction, I cannot join its opinion.
 While the majority's opinion is voluminous, and its constitutional analysis at times complex, my quarrel with it stems from its failure to grasp the significance of the Colorado General Assembly's choice of the sentencing range available upon conviction of any particular crime. See op. at 727-28. Without resort to accepted aids to statutory construction or any attempt to reconcile or distinguish our numerous prior interpretations of the sentencing scheme, the majority finds that the maximum sentence authorized for a felony conviction, for Sixth Amendment purposes, does not extend to the full range of penalties described in section 18-1.3-401,15 but is limited according to the nature and source of the facts relied on to support any particular sentence.
 In reaching that conclusion, the majority confounds the constitutionality of sentencing beyond the legislatively prescribed "statutory maximum" with the legislature's choice of a "statutory maximum" in the first place. Unlike the majority, I consider it perfectly clear that unless a sentence exceeds the maximum sentence that is within the discretion of the sentencing court to impose without additional fact-finding, the constitutional sufficiency of facts considered by the sentencing court never arises. I am also convinced that nothing in the Supreme Court's sentencing jurisprudence can reasonably be construed to suggest an intent to interfere with our construction of the statutes of our own jurisdiction or to ascribe a different meaning to the term "statutory maximum" than the words themselves imply.
 The Supreme Court has now made abundantly clear that a defendant is entitled to have any fact that increases his penalty for a crime beyond the prescribed statutory maximum (other than the fact of a prior conviction) submitted to a jury and proved beyond a reasonable doubt. Blakely, 124 S.Ct. at 2536 (citing Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)). By "statutory maximum" the Court explains that it means the maximum sentence that a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. United States v. Booker, ___ U.S. ___, ___, 125 S.Ct. 738, 747, 160 L.Ed.2d 621 (2005); Blakely at 2538. In the next breath, the Supreme Court emphasizes that it has, however, never doubted the authority of a judge to exercise broad discretion in imposing a sentence within the statutory range, Booker at 750 (citing Williams v. New York, 337 U.S. 241, 246, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949)), including giving consideration to not only the conduct with which the offender was expressly charged, but also his actual conduct in committing the charged offense, his unrelated criminal conduct, and even aspects of his life that go beyond antisocial conduct. See Williams, 337 U.S. at 246, 69 S.Ct. 1079 (upholding what has come to be referred to as "real offense" sentencing); see also People v. Newman, 91 P.3d 369, 372 (Colo.2004) (noting the agreement of Colorado sentencing statutes, which require consideration of "the nature of the offense, the character of the offender, and the public interest").
 Colorado's presumptive sentencing scheme, which became effective in 1979,16 divides felonies into various classes and establishes a presumptive range of imprisonment for each class. § 18-1.3-401(1)(a)(V)(A). Among its options, a court may sentence a convicted felon to a term of incarceration ranging from one-half of the minimum term authorized in the presumptive range to twice the maximum term authorized in the presumptive range. § 18-1.3-401(6). A sentence to incarceration is limited to the presumptive range "unless [the sentencing court] concludes that extraordinary mitigating or aggravating circumstances are present, are based on evidence in the record of the sentencing hearing and the presentence report, and support a different sentence which better serves the purposes of [the] code." Id. If the court chooses to sentence beyond the presumptive range, for reasons other than being specifically required to do so by other statutory provisions (which are not applicable to this case), the statute requires it to "make specific findings on the record of the case, detailing the specific extraordinary circumstances which constitute the reasons for varying from the presumptive sentence." § 18-1.3-401(7). This court has consistently rejected any suggestion that a sentence beyond the presumptive range may not be predicated on the facts proving the elements of the crime alone. See People v. Leske, 957 P.2d 1030 (Colo.1998); People v. Phillips, 652 P.2d 575 (Colo.1982).
 While the Supreme Court has made clear that the constitution cares not whether a separate factual finding increasing the statutory maximum is labeled an element of the crime or a sentencing factor, it has never suggested that the decision whether to demand additional findings of fact for a particular sentence rests anywhere but with the legislature. Unlike the express language of the Washington statute found particularly significant by the Supreme Court in Blakely, the language of Colorado's statute did not require the sentencing court in this case "to set forth findings of fact and conclusions of law," Blakely, 124 S.Ct. at 2535, in support of its sentence; nor did it provide for a separate review of the sentencing court's reasons for exceeding the presumptive range according to the "clearly erroneous standard," id., generally applicable to findings of historical fact. The Colorado statute merely required the court to detail, on the record, the extraordinary circumstances upon which it relied for varying from the presumptive sentence, and it merely subjected the resulting sentence to review according to the proprietary or abuse of discretion standard applicable to prison sentences generally, whether they fall outside the presumptive range or not. See § 18-1-409, C.R.S. (2004).
 Of perhaps even greater importance, however, the Supreme Court in Blakely accepted and relied on the Washington Supreme Court's interpretation of its own statute, requiring that "`[a] reason offered to justify an exceptional sentence can be considered only if it takes into account factors other than those which are used in computing the standard range sentence for the offense.'" Blakely, 124 S.Ct. at 2535 (quoting State v. Gore, 143 Wash.2d 288, 21 P.3d 262, 277 (2001).) By contrast, we have long construed our sentencing scheme to permit a sentence beyond the presumptive range based on precisely the same facts that justified the conviction. See Leske, 957 P.2d at 1044 ("Thus, a sentencing court is not precluded from considering as extraordinary aggravating circumstances facts tending to establish an element of an offense—even though these elements must always exist for a conviction—as long as the court relates those facts to the particular defendant and the circumstances of the crime."); People v. Sanchez, 769 P.2d 1064, 1068 (Colo.1989) (holding that sentencing court may consider all relevant factual matters, including facts that tend to establish elements of the offense in question).
 Since the earliest days of presumptive sentencing, we have held that the factors or sentencing considerations leading a court to give a more mitigated or more aggravated sentence within the presumptive range are identical to those justifying a sentence in excess of the presumptive range. See Phillips, 652 P.2d 575; see also People v. Walker, 724 P.2d 666 (Colo.1986); Flower v. People, 658 P.2d 266 (Colo.1983) ("If aggravating or mitigating circumstances exist, and if the court finds them to be extraordinary ...."). There is no rigid line between aggravation and extraordinary aggravation that makes them either qualitatively or quantitatively distinguishable. See Phillips at 580 (holding that the difference between "aggravating or mitigating circumstances" and "extraordinary mitigating or aggravating circumstances" is not objectively quantifiable); id. at 582 (Lohr, J., specially concurring) (finding that it is "not conceivable that the legislature was endeavoring to compartmentalize and divide precisely the ordinary and the extraordinary"). We have therefore long considered it within the discretion of the sentencing court to characterize the circumstances surrounding the offense and the offender as extraordinarily mitigated or aggravated. Similarly, we have long construed the statutory requirement for a statement of reasons justifying a sentence outside the presumptive range, like the required statement of reasons supporting any sentence to a correctional facility, as serving such salutary purposes as aiding appellate review of a sentence, fostering rationality and consistency in the sentencing process, and providing information beneficial to both the defendant and correctional authorities, rather than as a statement of separately reviewable findings of fact. See Walker, 724 P.2d at 668.
 The majority characterizes the Blakely Court as having "rejected any distinction, for purposes of Sixth Amendment analysis, between mandatory or discretionary aggravated sentencing systems based on judicial fact-finding." Op. at 723. As the Supreme Court has made abundantly clear, however, at least since Booker, the constitutional limitation to which it refers concerns only sentences beyond the "statutory maximum." It is constitutionally inconsequential whether the legislature has divided the full range of sentences prescribed for a particular crime into subranges, with lesser maximum and minimum sentences it considers appropriate on the basis of additional, judicially-determined facts, as long as it remains within the discretion of the sentencing court to choose any term within the full statutory range established for that offense. Booker, 125 S.Ct. at 764.
 This court has consistently construed Colorado's presumptive sentencing scheme as operating in a manner similar to (but even more discretionary than) the post-Booker federal sentencing guidelines, in effect amended by the severance of their mandatory language. Nothing more than a conviction is required to give Colorado sentencing courts the discretion to impose a sentence to imprisonment as low as one-half the minimum of the presumptive range and as high as twice the maximum of the presumptive range. The court must consider the nature of the offense, the character of the offender, and the public interest, and determine whether mitigating or aggravating circumstances are present, and if so, whether or not they are extraordinary. Unlike the federal guidelines, section 18-1.3-401(6) does not even suggest that sentencing within particular sub-ranges becomes appropriate only upon particular factual findings by the court; and unlike the federal review of departures from the guidelines for "unreasonableness," in consideration of the statutory factors that guide sentencing, review for an abuse of discretion remains the sole review permitted for sentences exceeding the presumptive range, just as for all other felony sentences in this jurisdiction.
 The majority, however, can be unconcerned by the discretionary nature of sentencing in the aggravated range because it understands the term "statutory maximum" to have a special meaning "for Sixth Amendment purposes." Op. at 727. Seizing on the Supreme Court's explanation in Blakely that by "statutory maximum" it meant "the maximum sentence a judge may impose solely on the basis of facts reflected in the jury verdict or admitted by the defendant," id., the majority apparently concludes that "statutory maximum" refers to a sentence that is imposed solely in reliance upon the elements of the offense or admissions of the defendant. This understanding leads the majority to further conclude that the "statutory maximum" cannot refer to any particular term of years prescribed by statute but must refer to a sentence imposed in reliance on certain kinds of facts, or facts that were determined in a particular way. The "statutory maximum," in the majority's view, is therefore not defined as a legislatively prescribed point below which the exercise of a sentencing court's discretion is not contingent upon finding additional facts, but as a sentence with regard to which the sentencing court has not actually relied on anything more than the elements of the offense or the admissions of the defendant.
 As understood by the majority, the "statutory maximum" is both defined in terms of so-called "Blakely-compliant" facts and simultaneously used to determine when Blakely-compliant facts are constitutionally mandated. Apart from the circularity of this reasoning, it is clearly incompatible with the Supreme Court's continued endorsement of "real offense" sentencing, see Booker, 125 S.Ct. at 750, which contemplates the consideration of all relevant factors concerning the offense and the offender, over and above the jury verdict in the particular case, to determine precisely where within a statutorily authorized range the appropriate sentence should lie. Although the majority would prefer to limit this rationale to an "aggravated circumstances analysis," see op. at 727, once the "statutory maximum" is no longer a matter of legislative choice, it is difficult to understand why the same reasoning does not apply to sentencing in the presumptive range, or any range for that matter.
 If I felt compelled to find the vast majority of sentences permitted beyond the presumptive range to be unconstitutional, as the majority does, I would also consider it our obligation to follow the Supreme Court's lead, see Booker (Breyer, J., severing the mandatory aspects of the federal sentencing guidelines), and our own statutory mandate, see § 2-4-204, C.R.S. (2004), and preserve, by severance, as much of the scheme as would be consistent with legislative intent. Because I consider it clear, however, that a sentence in the aggravated range does not exceed the "statutory maximum" prescribed for conviction of any particular felony, I would affirm the court of appeals without finding the statute unconstitutional in any respect. I therefore concur only in the judgment of the court.
 I am authorized to say that Justice KOURLIS and Justice RICE join in the concurrence.
 1. Justice KOURLIS, Justice RICE and Justice COATS would grant the Petition.
 2. The Court granted certiorari on this issue:
 Whether Blakely v. Washington, 541 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), prohibit aggravation of Petitioner's sentence under sections 18-1-105(6) & (7) (now sections 18-1.3-401(6) & (7)).
 3. The offenses in this case occurred in 2000 and 2001 and the sentence was imposed in 2001. The current versions of the relevant statutes will be cited except with regard to the crimes committed. The sentencing statutes are unchanged in all relevant portions.
 4. A person commits Vehicular Homicide—Reckless Driving if he or she "operates or drives a motor vehicle in a reckless manner, and such conduct is the proximate cause of the death of another." § 18-3-106(1)(a), 6 C.R.S. (2001).
 5. The elements of Driving Under the Influence are consumption of alcohol or one or more drugs or a combination thereof such that the person is "substantially incapable, either mentally or physically, or both mentally and physically, to exercise clear judgment, sufficient physical control, or due care in the safe operation of a vehicle." § 42-4-1301(1)(f), 11 C.R.S. (2001). A person drives with excessive alcohol content if the person is tested at "0.10 or more grams of alcohol per hundred milliliters of blood or 0.10 or more grams of alcohol per two hundred ten liters of breath at the time of driving." § 42-4-1301(2)(a), (2)(c).
 6. A person commits reckless driving if he or she "drives any motor vehicle ... in such a manner as to indicate either a wanton or a willful disregard for the safety of persons or property." § 42-4-1401(1), 11 C.R.S. (2001).
 7. This opinion discusses the New Jersey and Washington sentencing systems as they existed at the time Apprendi and Blakely were issued.
 8. The Court used the term "determinate" to mean that the judge imposes a certain term to imprisonment, as opposed to those systems in which the judge imposes a floor and a ceiling and a paroling authority determines the release date. See Jon Wool, "Beyond Blakely: Implications of the Booker Decision for State Sentencing Systems," Policy and Practice Review 1, 3 (Feb. 2005).
 9. The Court used the Kansas statute as an example of how a determinate sentencing scheme can be upheld and modified to comply with its ruling. Blakely, 124 S.Ct. at 2541. After Apprendi, Kansas amended its Departure Sentencing statute to provide that
 [t]he court shall determine if the presentation of any evidence regarding the alleged facts or factors that may increase the penalty for a crime beyond the statutory maximum, other than a prior conviction, shall be presented to a jury and proved beyond a reasonable doubt during the trial of the matter or following the determination of the defendant's innocence or guilt.
 See Kan. Stat. Ann. § 21-4718(b)(2) (2005).
 10. See Wool, "Legal Considerations for State Sentencing Systems," at 10 ("there now appear to be five members of the Court who believe Almendarez-Torres [the source of the prior conviction exception] was wrongly decided"); see also, Douglas A. Berman, "Conceptualizing Blakely" 17 Fed. Sent. Reporter 89, 90 (Dec.2004)("some commentators have asserted that this exception is an illogical and inappropriate gap in the Supreme Court's recent sentencing jurisprudence").
 11. Lopez is entitled to retroactive application of Blakely because his case was on direct appeal at the time that opinion was issued. See Booker, 125 S.Ct. at 769.
 12. We do not hold that a defendant must admit that relevant facts are extraordinary aggravating circumstances. We conclude that this determination is a conclusion of law that remains within the discretion of the trial court if it is based on Blakely-compliant or Blakely-exempt facts. See Blakely, 124 S.Ct. at 2538 n. 8; see also Section II.D.4.a., infra.
 13. Section 18-1.3-401(6) requires judges to make a second legal determination that "a different sentence ... better serves the purposes of this code with respect to sentencing." This legal determination also is for the court to make, but must be based on facts that are before it in a manner compliant with Apprendi, Blakely, and the Sixth Amendment.
 14. Several divisions of the court of appeals have decided cases based on Apprendi and Blakely. To the extent that some of these cases employ reasoning or reach conclusions that are inconsistent with this opinion, we overrule them on those points. See, e.g., People v. Barton, ___ P.3d ___, ___, 2004 WL 2903510 *3 (Colo.App. Dec.16, 2004)(holding that Blakely prohibits a trial court from finding that "raw facts" constitute extraordinary aggravating circumstances; whereas such a legal determination is within the court's discretion if the underlying facts are Blakely-compliant or Blakely-exempt); People v. Moon, ___ P.3d ___, ___, 2004 WL 2503424 *5 (Colo.App. Oct.21, 2004)(holding that trial court erred when it found that "the underlying offense constituted an extraordinary aggravating circumstance;" whereas such a conclusion may be proper under Leske, 957 P.2d at 1044); People v. Rivera, 62 P.3d 1056, 1060 (Colo.App.2002)(upholding extraordinary aggravated sentencing because the Colorado statute does not enumerate the aggravators that may be considered; whereas Blakely made clear that there is no functional difference between enumerated and unenumerated sentencing factors for Sixth Amendment purposes); People v. Allen, 78 P.3d 751, 754-55 (Colo.App.2001)(upholding extraordinary aggravated sentencing after Apprendi because the aggravators used are not enumerated in the statute and are the same type of factors traditionally considered in sentencing decisions; whereas Blakely rejected this reasoning).
 15. § 18-1.3-401, C.R.S. (2004) (formerly § 18-1-105).
 16. Ch. 1, sec. 1, 1978 Colo. Sess. Laws, First Extraordinary Sess. 1.