PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

No. 04-2340

GERARDO CORCHADO,

Defendant-Apelllant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. 03-CR-2486-MCA)**

David N. Williams, Assistant United States Attorney (David C. Iglesias, United States Attorney, with him on the brief), Albuquerque, New Mexico, for Plaintiff-Appellee.

Joseph W. Gandert, Assistant Federal Public Defender, Albuquerque, New Mexico, for Defendant-Appellant.

Before **SEYMOUR**, **BALDOCK**, and **O'BRIEN**, Circuit Judges.

**BALDOCK**, Circuit Judge.

A jury convicted Defendant Gerardo Corchado on two counts of distributing less than 100 grams of heroin in violation of 21 U.S.C. § 841(a)(1) and one count of using a minor to commit a drug offense in violation of 21 U.S.C §§ 861(a)(1) and (b). The district court sentenced Defendant to eighty-seven months imprisonment. On appeal, Defendant argues the district court: (1) erred by permitting the Government to question him about a prior drug conviction on cross-examination; (2) enhancing his sentence based on findings that he obstructed justice and committed the instant drug offenses while on probation; and (3) treating the United States Sentencing Guidelines as mandatory. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and affirm.

I.

In September 2003, Albuquerque Police Department Officer Matthew Lujan, working undercover, assumed the role of a buyer interested in purchasing heroin. Through the use of a confidential informant, Officer Lujan arranged to meet Defendant at a Sonic restaurant. During the meeting Lujan purchased one ounce of heroin from Defendant. Defendant agreed that Lujan could purchase additional heroin if it proved to be of satisfactory quality. Lujan was wearing a recording device during the transaction. Later the same month, Lujan contacted Defendant by telephone to arrange for a second heroin purchase. Lujan recorded the conversation. Again, Lujan agreed to meet Defendant at the Sonic restaurant. During this meeting, undercover DEA Agent Jeffrey Armijo accompanied Officer Lujan. Defendant's half-brother, Francisco Javier Holguin, who was a minor at the time,

2

accompanied Defendant. Lujan purchased two ounces of heroin. Again, Lujan was wearing a recording device during the transaction. Defendant was arrested in December 2003 on an outstanding warrant. A federal grand jury subsequently indicted Defendant the same month.

Before trial, Defendant filed a motion in limine seeking to exclude any testimony regarding his previous felony drug conviction for possession of marijuana. The Government argued the evidence was admissible under Fed. R. Evid. 404(b) to show Defendant's knowledge, intent, and absence of mistake with regard to the heroin he was charged with distributing. The court conditionally granted Defendant's motion. The court reasoned the probative value of such evidence was minimal because Defendant completely denied any possession or sale of the heroin, and not merely that the drugs were in his possession without his knowledge or by mistake or accident. The court deferred ruling on whether Defendant's prior conviction might be relevant for any other purpose, including impeachment. The court also instructed the lawyers to approach the bench or seek leave outside the jury's presence before eliciting any testimony concerning Defendant's prior conviction.

At trial, Defendant argued Holguin actually sold the heroin to Officer Lujan. Several of Defendant's relatives testified on his behalf, including Holguin, who testified he was the individual who sold the heroin to Lujan. Defendant also took the stand in his own defense. Defendant denied being involved in the two drug sales and testified he had never been to the Sonic restaurant where the transactions occurred. He testified the voice on the recordings was that of his half-brother, Holguin. On direct examination, Defendant testified as follows:

Q. Did you ever do a drug deal on September 11, 2003.

A. No, Never.

Q. Did you do a drug deal on September 17, 2003?

A. Never.

* * *

Q. What did you tell the DEA?

A. He asked me if I had employed a minor, a young man, to sell drugs for me. I told him never. He said the young man was driving a Mustang that was in my name, that I had sent him to sell drugs. I told him I had never sold drugs in my hands, I never sent anyone. He answered me with bad words. He told me it's a Mustang. He showed me a photograph. He said, "It's yours." And I said, "Yes, it's mine." Afterward, he asked me, "Why did I have the young man selling drugs?" I said never until he told me the name of the person who had sold the drugs. He said it was Francisco Holguin. I answered that Fransicso Holguin is my brother.

* * *

[T]hey asked me if I know a person whose name was Lujan and he drove a blue Escalade, if he had given me the drugs to sell them. I told him I never sold drugs. He said that, [d]id he give it to Javier? If you want to know, I said, ask Javier because I have nothing to do with that.

Without seeking permission from the court or requesting a bench conference, the Government on cross examination questioned Defendant about his previous drug offense as follows:

Q: Now, in some of your testimony . . . you indicated that you have never handled drugs.

A: I was not referring to that. On that occasion, I was never there, I was

4

never present.  I was never in that place.  What was the name of that restaurant?  That's what I was referring to.

\* \* \*

Q:    In fact, Mr. Corchado, you, in fact, possessed over five pounds [of marijuana] but less than 50 pounds in El Paso County, Texas, in August of 1998; is that correct?

A:    That is correct, in 1998.  At that time, I was not tried.  I did not go to trial.  I accepted the responsibility.  I pled guilty.

Defendant never objected to this line of questioning.

II.

Defendant first argues on appeal that the Government's foregoing questioning regarding his prior conviction warrants reversal.  Because Defendant did not object at trial, our review is limited to whether plain error occurred.  "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings."  United States v. Gonzalez-Huerta, 403 F.3d 727, 732 (10th Cir. 2005) (en banc) (internal quotations omitted).  Assuming any error was plain, we conclude Defendant has not established that such error affected his substantial rights.

To satisfy the third prong of the plain error test, Defendant must show the error "'affected the outcome of the district court proceedings.'"  Gonzalez-Huerta, 403 F.3d at 732 (quoting United States v. Cotton, 535 U.S. 625, 632 (2002)).  To meet this burden, Defendant must show "a reasonable probability that, but for the error claimed, the result of the

5

proceeding would have been different." United States v. Dominguez Benitez, 542 U.S. 74, __ (2004) (internal quotations and citations omitted). The ample record evidence aside from Defendant's prior conviction testimony leads us to conclude such testimony did not affect the outcome of Defendant's trial. See United States v. Gonzalez Edeza, 359 F.3d 1246, 1251 (10th Cir. 2004) (finding no plain error where "overwhelming and essentially uncontroverted" evidence of guilt exists).

The record on appeal shows Officer Lujan identified Defendant at trial as the individual who sold him heroin on two occasions. Additionally, DEA Agent Armijo, who accompanied Officer Lujan during one of the September meetings, unequivocally identified Defendant as the individual at Sonic who sold heroin to Lujan. The jury also heard recordings of Defendant's voice, heard a voice exemplar Defendant provided to the DEA, and heard him testify. Thus, the jury was able to make its own determination as to whether the voice on the recordings was Defendant's or Holguin's. The jury obviously concluded the voice was Defendant's. In light of this evidence, we cannot conclude a "reasonable probability" exists that the outcome of Defendant's trial would have been different had the Government not questioned Defendant about his prior conviction. See United States v. Beers, 189 F.3d 1297, 1301 (10th Cir. 1999) (noting we do not second guess the jury's assessment of witness credibility or weighing of the evidence).

III.

Defendant next challenges his sentence. In calculating Defendant's sentencing

6

guideline range, the district court began with a base offense level of 26. The court determined Defendant provided false testimony during the trial and therefore added two points for obstruction of justice, resulting in an adjusted offense level of 28. See U.S.S.G. § 3C1.1. In calculating Defendant's criminal history category, the district court added two points pursuant to U.S.S.G. § 4A1.1(d) because Defendant was on probation from his previous drug conviction when he committed the instant offense. This increased Defendant's criminal history category from I to II.

Prior to sentencing, the Supreme Court issued its decision in Blakely v. Washington, 542 U.S. 296 (2004). Blakely held Washington's sentencing scheme violated the Sixth Amendment because it required a sentencing court to impose a sentence not solely based on "facts reflected in the jury verdict or admitted by the defendant." 542 U.S. at __. Mindful that the Blakely decision may extend to the federal sentencing guidelines, the district court imposed alternative sentences. The district court found that if Blakely did not apply, an offense level of 28 and a criminal history category of II resulted in a sentencing guidelines range of 87 to 108 months. Using that guideline range, the judge imposed a sentence of 87 months. Then, considering the Blakely principles, the court eliminated the two-level enhancement for obstruction of justice, dropping the sentencing range to 70 to 87 months. The court announced that if it applied the principles in Blakely, the court would still sentence

7

Defendant to 87 months.[1]

After sentencing, the Supreme Court decided United States v. Booker, 125 S. Ct. 738 (2005). Booker extended Blakely's rationale to the United States Sentencing Guidelines. Thus, for purposes of the Guidelines, the Sixth Amendment requires "any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Id. at 756; see also Gonzalez-Huerta, 403 F.3d at 731. To ameliorate potential Sixth Amendment violations, the Booker Court severed 18 U.S.C. § 3553(b)(1), which had required courts to impose sentences within the applicable guidelines range, thus rendering the Guidelines advisory rather than mandatory.

We have delineated Booker error as either constitutional or unconstitutional. Gonzalez-Huerta, 403 F.3d at 731-32. A district court commits "constitutional Booker error" "by relying upon judge-found facts, other than those of prior convictions, to enhance a defendant's sentence mandatorily." Gonzalez-Huerta, 403 F.3d at 731. Non-constitutional Booker error occurs when the district court applies the Guidelines in a mandatory fashion. Id. at 731-32. Defendant now asserts both constitutional and non-constitutional Booker

---

[1]Defendant asked the court to apply the principles in Blakely to his criminal history calculation, thereby decreasing his criminal history category to I. The court declined, finding the fact that Defendant was on probation at the time of the instant offense was a fact of a "prior conviction" and therefore not subject to the Blakely principles. See Apprendi v. New Jersey, 530 U.S. 466, 490 (2000).

8

error. Defendant contends the district court's enhancement of his offense level to 28 and his criminal history to a category II violated his Sixth Amendment right to a jury trial. He also asserts the district court erroneously treated the Guidelines as mandatory. Because Defendant objected to his sentence in the district court on the basis of Blakely, we review his sentence for harmless error. See United States v. Labastida-Segura, 396 F.3d 1140, 1142 (10th Cir. 2005).

## A.

First, we address the district court's enhancement of Defendant's criminal history category based on its finding Defendant was on probation when he committed the instant offenses. We find the enhancement of Defendant's criminal history category based on his probation status did not violate the Sixth Amendment. A judge may determine a fact of prior conviction without violating the Sixth Amendment. Almendarez-Torres v. United States, 523 U.S. 224 (1998). In Almendarez-Torres, the Supreme Court explained that recidivism "is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence," and "as typical a sentencing factor as one might imagine," the Constitution does not require the government to charge or prove to a jury either the existence of prior convictions or certain facts related to those convictions. Id. at 230-243; see also United States v. Moore, 401 F.3d 1220, 1221 (10th Cir. 2005) (holding the government is not required to charge in an indictment or prove to a jury either the existence of prior convictions or their classification as "violent felonies"). In United States v. Pineda-Rodriguez, 133 Fed.

9

Appx. 455, 458-59 (10th Cir. 2005) (unpublished), a panel of this court held the "prior conviction" exception extends to "subsidiary findings" such as whether a defendant was under court supervision when he or she committed a subsequent crime. We agree and conclude the district court did not err when it added two additional criminal history points pursuant to U.S.S.G. § 4A1.1(d). Accord United States v. Fagans, 406 F.3d 138, 141-42 (2d Cir. 2005) (holding that facts of prior conviction, such as defendant's probationary status, did not implicate defendant's Sixth Amendment rights).

B.

Next, we address Defendant's challenge to the district court's enhancement of his offense level based on its finding he committed obstruction of justice. The district court undoubtedly engaged in judicial fact-finding by enhancing Defendant's offense level from a 26 to 28 based on obstruction of justice. United States v. Dazey, 403 F.3d 1147, 1173-74 (10th Cir. 2005). The court adopted the probation officer's findings in the PSR that Defendant had committed obstruction of justice during the trial. But the increase in offense level did not actually increase Defendant's sentence, so no constitutional error occurred. As mentioned above, the court, with Blakely in mind and aware the Supreme Court may find the Guidelines unconstitutional, imposed an alternative sentence. The court found that without application of the two level enhancement, Defendant's offense level would be 26, the guideline range would be 70-87, and the court would still impose a sentence of 87 months. Thus, the judicial fact-finding in this case did not increase Defendant's sentence. United

10

States v. Yazzie, 407 F.3d 1139, 1144 (10th Cir. 2005) (holding no constitutional Booker error occurs where judicial fact-finding did not enhance the actual sentence).

C.

Finally, we address Defendant's claim of non-constitutional Booker error. The Booker Court excised 18 U.S.C. § 3553(b)(1), thereby rendering the Guidelines discretionary. Booker, 125 S. Ct. at 764. In light of Booker, the district court's mandatory application of the Guidelines was erroneous. Non-constitutional Booker errors, such as occurred in this case, warrant a remand for resentencing where we are unable to say, without undue speculation, that the district court would have imposed the same sentence on remand. Labastida-Segura, 396 F.3d at 1143. Here, we are not required to engage in any speculation, undue or otherwise, because the district court explained exactly what it would do if the Guidelines were found unconstitutional. See United States v. Serrano-Dominguez, 406 F.3d 1221, 1224 (10th Cir. 2005) (finding non-constitutional Booker error harmless where the district court imposed identical alternative sentences). Although the district court did not specify that it was applying the sentencing methodology suggested in Booker—namely consultation of the advisory Guidelines and the factors listed in 18 U.S.C. § 3553(a)—we know that the court consulted the Guidelines and adopted the findings in the PSR, which analyzed several of the factors set forth in 18 U.S.C. § 3553(a). See United States v. Rines, 419 F.3d 1104, 1107 (10th Cir. 2005) (noting that we do not require the district court to "march through § 3553(a)'s sentencing factors" before we uphold a sentence). Because we

11

are confident that the district court would impose the same sentence upon remand, we affirm the district court's decision.

AFFIRMED.