Petitioner: The PEOPLE of
the State of Colorado,

v.

Respondent: Michael Floyd HUBER.

No. 05SC40.

Supreme Court of Colorado,
En Banc.

April 24, 2006.

As Modified on Denial of Rehearing
May 30, 2006.*

* Justice EID does not participate.

John W. Suthers, Attorney General, Wendy J. Ritz, Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, for Petitioner.

David S. Kaplan, Colorado State Public Defender, Jason C. Middleton, Deputy State Public Defender, Denver, for Respondent.

Justice COATS concurring in part and concurring in the judgment.

Justice EID does not participate.

RICE, Justice.

## I. Facts and Procedural History

In April 2001 Respondent, Michael Huber, was charged with sexual assault on a child by one in a position of trust, section 18–3–405.3, C.R.S. (2005);[1] attempted sexual assault on a child by one in a position of trust, section 18–2–101; and indecent exposure, section 18–7–302. Two additional counts of indecent exposure were later added to the information. The charges arose from an incident in

which Huber exposed himself, masturbated and made salacious remarks in front of T.A., a minor and friend of Huber's step-daughter who was spending the night in Huber's home.

Huber reached a plea agreement with the prosecutor under which Huber would plead guilty to one count of criminal attempt to commit sexual assault on a child by one in a position of trust and one count of indecent exposure,[2] and the prosecutor would drop the remaining charges. As part of this plea agreement, Huber and the prosecutor agreed to a deferred judgment and sentence of four years on the charge of attempted sexual assault on a child. The parties also agreed to a sentence of four years probation on the indecent-exposure charge, which would run concurrently with the deferred judgment and sentence. As part of the plea agreement, Huber entered pleas in two other pending cases, admitting "to violation in his misdemeanor probation revocation case," and pleading guilty to harassment in another case.

On October 4, 2001, the parties presented their agreement to the trial judge in a disposition hearing. At this hearing, the trial judge explained to Huber that the presumptive sentencing range for attempted sexual assault on a child was one to three years, with a maximum possible sentence of six years. The prosecutor then explained to Huber the elements of each of the charges, informing him that he had a right to require the prosecution to prove the elements to a jury beyond a reasonable doubt. Following this exchange, the court found that Huber "freely, intelligently, voluntarily, and knowingly entered his pleas of guilty" and accepted the pleas.

The matter was set for sentencing on December 4, 2001. At the sentencing hearing, Huber's lawyer encouraged the court to accept the plea agreement, admitting that "my client has a long-standing problem with exposing himself" and that Huber was on probation at the time of the attempted sexual

---

1. We cite to the 2005 version of the code because the definition of the offenses with which Huber was charged have not changed in any way relevant to this opinion since the commission of the offenses.

2. The indecent-exposure charge arose from past incidents in which Huber had exposed himself to his step-daughter. This charge is not relevant to this appeal.

assault, but arguing that Huber could benefit from deferred judgment and sentence combined with treatment. The court accepted the plea agreement and placed Huber on deferred-judgment-and-sentence status for a period of four years.

On September 11, 2002, Huber's probation officer filed a Complaint for Revocation of Deferred Judgment and Sentence. The complaint alleged that Huber had violated the conditions of his deferred judgment by 1) failing to pay fees and costs as directed by the court; 2) having contact with a minor; 3) not immediately removing himself from the situation upon encountering the minor; 4) possessing pornographic images; 5) being terminated from his offense-specific treatment program; and 6) accessing the Internet.

At a hearing on July 1, 2003, Huber pleaded guilty to the Complaint for Revocation of Deferred Judgment and Sentence pursuant to a plea agreement under which Huber and the prosecution agreed to a "sentencing cap of 5 years DOC." The trial court sentenced Huber to a term of five years in the Department of Corrections, "[t]he cap pursuant to the agreement." The court noted that this sentence was in the aggravated range, and made several findings of fact to justify aggravation. Among these were the facts that Huber was "being supervised as a sex offender at the time he picked up this particular case," that Huber was terminated from his sex-offender treatment program, and that Huber had violated the terms of his deferred judgment by involving himself with pornography.

Huber contends that this sentence violates his rights under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). The court of appeals agreed, vacated Huber's sentence, and remanded for resentencing. *People v. Huber*, No. 03CA1579, slip op. at 4 (Colo.App. Dec. 16, 2004). For the reasons set forth below, we conclude that Huber's

*Blakely* and *Apprendi* rights were not violated, and we therefore reverse the court of appeals and uphold the sentence imposed by the trial court.

## II. Analysis

■ In *Lopez v. People*, 113 P.3d 713 (Colo.2005), we applied the rule of *Apprendi* and *Blakely* to section 18–1.3–401(6), C.R.S. (2005),[3] which authorizes a trial judge to impose a sentence of up to "twice the maximum ... authorized in the presumptive range for the punishment of the offense" when the judge finds "aggravating circumstances" that justify the increased sentence. We held that a judge may increase a sentence under section 18–1.3–401(6) without running afoul of the *Apprendi–Blakely* rule as long as the sentencing increase is based on one of four types of facts: 1) facts found by a jury beyond a reasonable doubt; 2) facts admitted by the defendant; 3) facts found by a judge after the defendant stipulates to judicial fact-finding for sentencing purposes; and 4) facts regarding prior convictions. *Lopez*, 113 P.3d at 719. We labeled the first three types of facts "*Blakely*-compliant" and the fourth type of fact "*Blakely*-exempt." *Id.* at 723.

■ Huber's case was on direct appeal at the time *Blakely* was decided; therefore, the *Blakely* rule applies to his case. *See Lopez*, 113 P.3d at 716; *United States v. Booker*, 543 U.S. 220, 268, 125 S.Ct. 738, 769, 160 L.Ed.2d 621 (2005). As explained above, Huber committed the instant offense while he was on sex-offender supervision as a result of a prior conviction. We conclude that the trial court properly sentenced Huber in the aggravated range based on this prior-conviction fact, and we therefore reverse the court of appeals and uphold the trial court's sentence.[4]

### A. The Trial Court Properly Considered the Fact that Huber Committed the Instant Offense While Under Supervision for an Earlier Conviction

The trial court expressly based aggravation in part on the fact that Huber was on

3. We cite to the 2005 version of section 18–1.3–401(6) because this version is identical to all prior versions referenced in this opinion.

4. We note that Huber has fully discharged the sentence at issue in this case. Nonetheless, we deem it necessary to evaluate the constitutionality of the sentence.

supervision as a sex offender at the time of his offense. Huber does not dispute that he was undergoing sex-offender treatment at the time of the offense based on his December 1998 conviction of two counts of indecent exposure.[5] Under *Blakely* and *Lopez,* it was permissible for the trial court to consider this fact in deciding to sentence Huber in the aggravated range. *See DeHerrera v. People,* 122 P.3d 992, 994 (Colo.2005) (upholding aggravated sentence where trial court imposed an aggravated-range sentence because of "the short period of time between [the defendant's] release from prison and the commission of the offense in this case").

Despite the numerous statements by this court and the United States Supreme Court that affirm the validity of the prior-conviction exception to the *Blakely* rule,[6] Huber maintains that it was improper for the court to aggravate his sentence because of his prior conviction. Huber's first argument on this score is that the "continued validity" of the prior-conviction exception to *Blakely* is "highly questionable." In support of this argument, *Huber* directs the court to concurring opinions of Justice Thomas in *Apprendi,* 530 U.S. at 521, 120 S.Ct. 2348 (Thomas, J., concurring), and *Shepard v. United States,* 544 U.S. 13, 125 S.Ct. 1254, 1264, 161 L.Ed.2d 205 (2005) (Thomas, J., concurring), which suggest that a majority of the Supreme Court now recognizes that the prior-conviction exception to *Blakely* is no longer constitutionally viable. Huber, however, points to no new legal developments that should alter our conclusion in *Lopez* that "[a]lthough there is some doubt about the continued vitality of the prior conviction exception, we conclude that it remains valid after *Blakely.*" *Lopez,* 113 P.3d at 723. *See also State Oil Co. v. Khan,* 522 U.S. 3, 20, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997) (stating that it is the "[Supreme] Court's prerogative alone to overrule one of its precedents"). Therefore, we decline to readdress this issue.

Secondly, Huber urges us to hold that the prior-conviction exception to *Blakely* violates the Colorado Constitution. In support of this argument, Huber reminds us of the familiar principle that nothing in our federal system of government prohibits the Colorado Constitution from offering greater protections than the federal Constitution. *See People ex rel. Juhan v. District Court,* 165 Colo. 253, 261, 439 P.2d 741, 745 (1968) (recognizing the authority of each state "to create protections for its citizens which might not be required under the federal concept").

Along with *Juhan,* Huber cites *People v. Rodriguez,* 112 P.3d 693 (Colo.2005), for the proposition that "the state constitutional right to jury trial may be more protective than that [of the] federal constitution." Huber's reliance on *Rodriguez* is not persuasive. In *Rodriguez,* we concluded that the Colorado Constitution grants defendants the right to a twelve-person jury in certain circumstances, despite the fact that the United States Supreme Court had declined to find such a right in the Sixth Amendment of the federal Constitution. *Rodriguez,* 112 P.3d at 698. The *Rodriguez* holding was based on language in the Colorado Constitution, absent in the federal Constitution, that confers the twelve-person-jury right. *Id.* Unlike the defendant in *Rodriguez,* Huber has failed to point to any language in the Colorado Constitution or to any opinion of a Colorado court that suggests that Colorado's jury-trial requirements apply more forcefully to section 18–1.3–401(6) than does the federal Constitution. Because our independent research likewise fails to uncover a basis in the Colorado Constitution for the right Huber claims, we conclude that no such right exists.

The third argument Huber makes to support his contention that the trial court erroneously enhanced his sentence based on his prior conviction is that the conviction was for a misdemeanor, and not a felony. Huber

---

5. In fact, in the written statement attached to the presentence report, Huber affirmatively admitted this conviction, as well as the facts that he was placed on probation and ordered to complete sex-offender treatment as a result of the conviction.

6. *See Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348; *Blakely,* 542 U.S. at 301, 124 S.Ct. 2531; *Booker,* 543 U.S. at 230, 125 S.Ct. 738; *Lopez,* 113 P.3d at 720; *DeHerrera,* 122 P.3d at 994. It should be noted that our decision in *DeHerrera* was not available to Huber when briefs were filed in the instant case.

argues that, because not all misdemeanor cases are tried to a jury, the use of misdemeanor convictions for sentence enhancements could violate defendants' *Blakely* rights.[7] Huber bases this argument on language in *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), in which the Supreme Court recognized that the reason the fact of a prior conviction need not be listed in the indictment and proved to a jury is that the "prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees." *Id.* at 249, 119 S.Ct. 1215. Huber argues that this language forbids the use of a prior conviction unless the conviction was the result of a jury verdict.

This argument misapprehends the rationale behind the prior-conviction exception. *Apprendi* and *Blakely* set limits on judicial factfinding. *See Blakely*, 542 U.S. at 303–04, 124 S.Ct. 2531 ("[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*") (emphasis in original). A judge no more has to find additional facts when the defendant's prior conviction is for a misdemeanor than when it is for a felony. In light of this, the proper reading of the above language in *Jones* is that, as long as the prior conviction arose from procedures that satisfy the Sixth and Fourteenth Amendments, the judge may consider the prior conviction at sentencing.

Cases from other jurisdictions support this conclusion. *See United States v. Burge*, 407 F.3d 1183, 1191 (11th Cir.2005) ("Accordingly, [a] prior nonjury juvenile adjudication that was afforded all constitutionally-required procedural safeguards can properly be characterized as a prior conviction for *Apprendi* purposes.") (internal quotation marks omitted); *Ryle v. State*, 842 N.E.2d 320, 323 (Ind.2005) (holding that juvenile adjudications fit within the prior-conviction exception because "[t]he main concern [of the prior-conviction exception] was whether the

prior conviction's procedural safeguards ensured a reliable result, not that there had to be a right to a jury trial"); *State v. Aleman*, 210 Ariz. 232, 109 P.3d 571, 580 (App.2005) (upholding sentencing enhancement based on prior misdemeanor conviction); *Goldsberry v. State*, 821 N.E.2d 447, 461 (Ind.App.2005) (holding that trial judge properly considered defendant's misdemeanor convictions).

We recognize that some courts and commentators have suggested that a defendant's *Apprendi–Blakely* rights are only protected if the prior conviction arose from a jury verdict. *See* Kevin R. Reitz, *Sentencing: What's at Stake for the States? Part Two: Considerations at Sentencing—What Factors Are Relevant and Who Should Decide?*, 105 Colum. L.Rev. 1082, 1100 and n. 68 (2005) (discussing theories of the prior-conviction exception to *Blakely*, including the theory that the exception only extends to those convictions for which the defendant had a right to a jury trial); *United States v. Tighe*, 266 F.3d 1187, 1194 (9th Cir.2001) ("The 'prior conviction' exception to *Apprendi*'s general rule must be limited to prior convictions that were themselves obtained through proceedings that included the right to a jury trial and proof beyond a reasonable doubt."); *cf. Ryle*, 842 N.E.2d at 321–22 (compiling cases and concluding that the Third, Eighth, and Eleventh Circuits include juvenile convictions in the prior-conviction exception, even though juveniles do not always have the right to jury trial).

■ Consistent with the *Ryle* court and the Third, Eighth, and Eleventh Circuits, we conclude that the prior-conviction exception to *Apprendi–Blakely* applies to all prior convictions that resulted from procedures consistent with the Sixth and Fourteenth Amendments. Where the Sixth and Fourteenth Amendments permit the government, in some circumstances, to convict and impose criminal penalties upon a defendant without a jury trial, *see Duncan v. Louisiana*, 391 U.S. 145, 159, 88 S.Ct. 1444, 20 L.Ed.2d 491

---

7. We note that defendants in Colorado are granted a right to jury trial in misdemeanor cases by section 18–1–406, C.R.S. (2005). We address the parties' arguments on this issue nonetheless, however, in order fully to explain the scope of the prior-conviction exception to the *Blakely* rule.

(1968), does it make sense to hold that, should that defendant ever again find himself before a sentencing judge, the Sixth and Fourteenth Amendments prevent the later judge from considering the fact of that conviction? We think not, and we therefore conclude that all convictions obtained in accordance with the Sixth and Fourteenth Amendments fall within the prior-conviction exception.

Huber's final argument on the prior-conviction issue is that the trial judge based aggravation on Huber's alleged failure at treatment and rehabilitation, and that this fact is not covered by the prior-conviction exception, which permits the judge to rely only on "the specific fact of a prior conviction." Contrary to Huber's assertion, the exception extends beyond the fact of conviction to "facts regarding prior convictions." *Lopez*, 113 P.3d at 716.

Although the United States Supreme Court has not delineated the precise scope of the prior-conviction exception, its most recent case that considers the issue supports the conclusion that a defendant's prior-conviction related probation or supervision falls within the exception.

In *Shepard v. United States*, 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), the Court considered the sentence of a defendant under the federal Armed Career Criminal Act (ACCA), which provides a mandatory minimum sentence of fifteen years for anyone possessing a firearm after three prior convictions for serious drug offenses or violent felonies. Under the Act, burglary is a "violent felony" that triggers the mandatory minimum sentence provision. *Shepard*, 125 S.Ct. at 1257. In an earlier case, the Court had held that "burglary" under the Act referred only to "generic burglary"-burglary involving entry into a building. *Id.* The legal issue in *Shepard* arose from the fact that some states define burglary more broadly than "generic burglary" to include entry into cars and boats. When one of a defendant's "violent felonies" is a burglary conviction from a state with a broader definition of burglary, it is not always clear whether the conviction was for a "generic burglary."

The defendant in *Shepard* had three times pleaded guilty to burglary in the state of Massachusetts, which defines burglary to include entry into boats and cars. The *Shepard* Court was faced with the question of what facts the sentencing court could consider in determining whether the convictions were for "generic burglary"—a burglary committed in a building—or for one of the other types of burglary contained in Massachusetts's burglary offense. In answering this question, the Court recognized that judicial inquiry into the facts of the defendant's prior convictions would implicate the *Apprendi* rule. The Court held that the sentencing court's inquiry must be "limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." 125 S.Ct. at 1263.

In light of *Shepard*, we conclude that the prior-conviction exception extends to "facts regarding prior convictions" that are contained in conclusive judicial records. Because a defendant's sentence to probation or supervision can be found in the judicial record, we conclude that a trial court may properly consider this fact without violating the defendant's *Blakely* rights. Therefore, the trial court did not err in considering the fact that Huber committed the instant offense while under supervision for a prior offense.

We note that several courts have come to the same or a similar conclusion. *See United States v. Corchado*, 427 F.3d 815, 820 (10th Cir.2005) (holding that the prior-conviction exception to *Blakely* permits a sentencing judge to enhance a defendant's sentence based on the fact that the defendant was on probation and under supervision at the time of the commission of the offense); *United States v. Fagans*, 406 F.3d 138, 142 (2d Cir. 2005) (upholding trial judge's consideration of defendant's probationary status because "the conviction itself and the type and length of a sentence imposed seem logically to fall within [the prior conviction] exception"); *cf. Ryle*, 842 N.E.2d at 325, 323 n. 5 (holding that judge could rely on presentence report to

determine that defendant was on probation at the time of the offense, but declining to base this holding the theory that "probation is derivative of criminal history"). *But see State v. Jenkins,* 199 Or.App. 384, 111 P.3d 782, 782 (2005) (striking down sentencing increase where judge found that defendant was on supervision because the increased sentence was based on the additional fact-finding that "parole or probation failed to deter defendant from committing further offenses") (internal quotation marks omitted); *United States v. Leach,* 325 F.Supp.2d 557, 561 (E.D.Pa.2004) (concluding that *"Blakely* renders [it] impermissible" for the judge to consider the fact that the defendant was on probation at the time he committed the offense).

### B. The Trial Court Did not Abuse its Discretion in Sentencing Huber in the Aggravated Range

■ Having concluded that it was proper for the trial court to consider the fact that Huber was on supervision at the time of the offense, we must now consider whether the court abused its discretion in determining that this fact justified aggravation. *See Lopez,* 113 P.3d at 727 n. 11 (holding that the determination whether "relevant facts are extraordinary aggravating circumstances ... is a conclusion of law that remains within the discretion of the trial court if it is based on *Blakely*-compliant or *Blakely*-exempt facts"). Given the proximity in time of the preceding conviction to the instant offense, *see DeHerrera v. People,* 122 P.3d 992, 994 (Colo.2005), as well as the fact that recidivism is "a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence," *see Almendarez–Torres v. United States,* 523 U.S. 224, 243, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), we conclude that the trial court did not abuse its discretion in determining that the conviction justified an increased sentence under section 18–1.3–401(6).

■ Moreover, the trial court's consideration of facts other than the fact that Huber committed his offense while under supervision for a prior conviction does not render the aggravated sentence invalid. As we held in *Lopez,* "[s]entencing within th[e] widened range under section 18–1.3–401(6), based on *Blakely*-compliant or *Blakely*-exempt factors, is both constitutionally and statutorily sound even if the sentencing judge also considered factors that were not *Blakely*-compliant or *Blakely*-exempt." *Lopez,* 113 P.3d at 731. In other words, "[o]ne *Blakely*-compliant or *Blakely*-exempt factor is sufficient to support an aggravated sentence." *Lopez,* 113 P.3d at 731; *quoted in DeHerrera,* 122 P.3d at 994.

### III. Conclusion

For the foregoing reasons, we reverse the court of appeals' decision and affirm the trial court's sentence.

Justice COATS concurring in part and concurring in the judgment.

Justice EID does not participate.

Justice COATS, concurring in part and concurring in the judgment.

I fully agree that the trial court did not rely on any impermissible facts or abuse its discretion in sentencing the defendant. Unless, however, the majority intends a partial retreat from our holding in *DeHerrera v. People,* 122 P.3d 992 (Colo.2005), I fail to appreciate the significance of its discussion of *Shepard v. United States,* 544 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), and its concern for "the precise scope of the prior-conviction exception." Maj op. at 633.

In *DeHerrera* this court held that "the existence of a prior conviction opens the aggravated sentencing range," 122 P.3d at 994, and that an aggravated sentence based on a prior conviction, which we referred to as a *Blakely*-exempt factor, " 'is both constitutionally and statutorily sound, even if the sentencing judge also considered factors that were not *Blakely*-compliant or *Blakely*-exempt,' " *DeHerrera,* 122 P.3d at 993 (*quoting Lopez v. People,* 113 P.3d 713, 731 (Colo. 2005)). *But see id.* at 995–96 (Coats, J., concurring in the judgment only) (criticizing the notion of a moving "statutory maximum"). That being the case, the fact "of" a prior conviction, under our sentencing regime, would seem to render superfluous any

need to limit the extent to which "'facts regarding prior convictions'" are *Blakely*-exempt. Maj. op. at 633 (*quoting Lopez,* 113 P.3d at 716).

If the existence of any prior conviction extends the range that is subject to traditional sentencing considerations to include the aggravated sentencing range of section 18–1.3–401, C.R.S. (2005), as we held in both *DeHerrera* and *Lopez,* then surely the fact "of" a conviction renders constitutionally and statutorily permissible the consideration of any "unusual aspects of the defendant's character, past conduct, habit, health, age, the events surrounding the crime, pattern of conduct which indicates whether the defendant is a serious danger to society, past convictions, and possibility of rehabilitation." *See DeHerrera,* 122 P.3d at 994. And therefore, once a prior conviction is found to exist, factors like failing to complete sex offender treatment, violating a deferred judgment agreement, and committing the current sex offense while being supervised for another sex offense, upon which the court relied in this case, necessarily become appropriate factors for consideration.

By contrast, the sentencing scheme with which the United States Supreme Court dealt in *Shepard* was substantially different and more clearly involved a sentence enhancement based simply on a finding of fact. Unlike Colorado's sentencing scheme, it did not permit a greater sentence whenever the court found some characteristic of the defendant or his crime to be extraordinarily aggravating, but rather provided an enhanced sentence only if the defendant had previously suffered a conviction of a specific kind. *Shepard,* 125 S.Ct. at 1257. The Supreme Court therefore described how the precise nature of a defendant's prior convictions could be established in a constitutionally permissible manner, in the context of a guilty plea.

In the case before us today, the trial court found the existence of a prior conviction, a necessary predicate to its determination that the defendant was being supervised for a prior conviction when he attempted the instant sexual assault on a child. Unless the majority implies that the existence of a prior

conviction (whether relied on to sentence beyond the presumptive range or not, *see De-Herrera,* 122 P.3d at 994) does not in fact "open[ ] the aggravated sentencing range" to traditional sentencing considerations, *id.,* its discussion of the scope of the prior-conviction exception appears to be inconsequential, not only for the particular sentence in this case but for virtually any conceivable sentence in this jurisdiction. If that implication is actually intended, I would make it express.

I therefore concur in part and concur in the judgment.