Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
November 19, 2018

**2018 CO 92**

**No. 16SC653, <u>Mountjoy v. People</u>—Aggravated Sentences—Due Process—Jury Trial.**

This case requires the court to determine if the trial court's decision to find discretionary aggravation was compliant with *Blakely v. Washington*, 542 U.S. 296 (2004). In this case, the trial court relied on a jury finding beyond a reasonable doubt as to elements of offenses for which there were convictions to aggravate the defendant's sentences for concurrent convictions.

The court holds that elements of an offense for which there is a conviction are *Blakely*-compliant facts because they were found by a jury beyond a reasonable doubt, and, therefore, a trial court can rely on such facts to aggravate a sentence for a concurrent conviction.

Accordingly, the court of appeals' judgment is affirmed on other grounds.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

## 2018 CO 92

### Supreme Court Case No. 16SC653
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 13CA1215

#### Petitioner:

Christopher Anthony Mountjoy, Jr.,

v.

#### Respondent:

The People of the State of Colorado.

### Judgment Affirmed
*en banc*
November 19, 2018

**Attorneys for Petitioner:**
Megan Ring, Public Defender
Jud Lohnes, Deputy Public Defender
    *Denver, Colorado*

**Attorneys for Respondent:**
Cynthia H. Coffman, Attorney General
Brock J. Swanson, Assistant Attorney General
    *Denver, Colorado*

**JUSTICE BOATRIGHT** delivered the Opinion of the Court.
**JUSTICE GABRIEL** dissents, and **JUSTICE HART** joins in the dissent.

¶1 Christopher Mountjoy was convicted of reckless manslaughter, illegal discharge of a firearm, and tampering with physical evidence after he shot and killed V.M. outside of a motorcycle clubhouse. During sentencing, the trial court found that each crime involved extraordinary aggravating circumstances. In doing so, the trial court relied on factual findings that were made by the jury beyond a reasonable doubt on the related charges as aggravating factors for the offense for which he was being sentenced. As a result, the trial court doubled the statutory presumptive maximum of each sentence.

¶2 Mountjoy appealed his sentences, arguing that aggravating his sentences in this fashion violated his constitutional rights to due process and trial by jury under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004). The court of appeals avoided the question of whether *Apprendi* and *Blakely* had been satisfied and concluded that, even assuming they were not satisfied, any error was harmless. We granted certiorari[1] and now affirm on other grounds. We hold that the trial court did not

---

[1] We granted certiorari to review the following issues:

1. Whether *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *United States v. Gaudin*, 515 U.S. 506 (1995), require a jury to make the ultimate determination of "extraordinary aggravating circumstances" under Colorado's residual sentence aggravator, where the requisite finding presents a mixed question of law and fact.

2. Whether a violation of the right to jury trial on a sentence aggravator can be harmless under *Washington v. Recuenco*, 548 U.S. 212 (2006), where the jury probably would have found the historical facts the judge relied on in finding the aggravator was present, but there is substantial doubt the jury would have drawn the ultimate conclusion that the historical facts proved the aggravator.

deny Mountjoy his rights to due process and trial by jury when it relied on facts found by the jury beyond a reasonable doubt on charges related to the offenses for which the aggravated sentences were imposed. Therefore, we affirm the judgment of the court of appeals on different grounds.

## I. Facts and Procedural History

¶3 This case arises from a shooting outside of a Sin City Disciples motorcycle clubhouse. On the night of the shooting, Mountjoy was working as the club's security. The victim of the shooting, V.M., participated in a fight and, as a result, was forced to leave the clubhouse. V.M. drove off with a friend, but they returned to the clubhouse shortly thereafter to reportedly retrieve a wallet he lost during the fight. In returning, the friend parked the car outside the clubhouse with the engine idling. Mountjoy testified that he was concerned that the victim had returned to retaliate. At that point Mountjoy fired eight shots in the direction of the car. As the shots were fired, the car drove away from Mountjoy. One of the fired shots struck and killed V.M. Following the shooting, Mountjoy directed other members of the club to clean up the area, and he deleted text messages from his phone that mentioned the shooting. Subsequently, the People charged

---

3. Whether a violation of the right to a jury trial on a sentence aggravator can be harmless under *Washington v. Recuenco*, 548 U.S. 212 (2006), where the prosecution neither charged the aggravator in the information nor gave pre-verdict notice it sought aggravation.

Because we conclude that Mountjoy's aggravated sentences satisfy *Blakely* and *Apprendi*, we do not address issues two and three, which relate to harmless error.

3

Mountjoy with first-degree murder after deliberation, first-degree extreme indifference murder, robbery, illegal discharge of a weapon, and tampering with physical evidence.

¶4 At trial, Mountjoy was found guilty of (1) reckless manslaughter (the lesser included offense to first-degree murder after deliberation and first-degree extreme indifference murder), (2) illegal discharge of a firearm, and (3) tampering with physical evidence. In sentencing Mountjoy, the trial court determined that there were extraordinary aggravating circumstances that warranted doubling the maximum presumptive range sentence for each of Mountjoy's three convictions under section 18-1.3-401(6), C.R.S. (2018). Specifically, the court found that the reckless manslaughter conviction was extraordinarily aggravated because Mountjoy used a weapon, tampered with evidence, admitted to firing eight shots, fired into a car with two occupants, and fired while the car was driving away. Furthermore, the court found that the illegal discharge conviction was extraordinarily aggravated because somebody died and Mountjoy tampered with evidence. Finally, the court found that the tampering count was extraordinarily aggravated because somebody died. By aggravating the sentences, the trial court sentenced Mountjoy to twelve years in prison for the reckless manslaughter charge, six years in prison for the illegal discharge of the firearm charge, and three years in prison for the tampering with physical evidence charge, each to be served consecutively, for a total of twenty-one years in prison.

¶5 Mountjoy appealed the aggravated sentences, arguing, among other things, that his constitutional rights to due process and a jury trial under *Blakely* and *Apprendi* had been violated because the trial court had issued aggravated sentences for each count

4

based on facts that the jury had not specifically found in connection with those particular counts.

¶6 The court of appeals upheld the enhanced sentences. *People v. Mountjoy*, 2016 COA 86, ¶ 55, __ P.3d __. The majority held that even if the trial court's actions violated *Blakely* and *Apprendi*, the error was harmless because the jury would have found the facts necessary to aggravate each count specifically in connection with each count had it been asked to do so. *Id.* at ¶ 1. In a special concurrence, Judge Jones argued that no *Blakely/Apprendi* error had occurred. *Id.* at ¶¶ 57–68. We granted certiorari and now affirm the court of appeals' judgment on different grounds.

## II. Standard of Review

¶7 We review legal questions and constitutional challenges to sentencing schemes de novo. *Misenhelter v. People*, 234 P.3d 657, 660 (Colo. 2010); *Lopez v. People,* 113 P.3d 713, 720 (Colo. 2005).

## III. Analysis

¶8 We begin by examining Mountjoy's sentencing and Colorado's aggravated sentencing scheme. Next, we discuss the constitutionality of aggravated sentencing schemes under *Blakely* and *Apprendi*, and how Colorado's scheme has been implemented to satisfy constitutional requirements. Finally, we conclude that each of Mountjoy's aggravated sentences are *Blakely*-compliant and therefore did not deny him his rights to due process and trial by jury.

## A. Colorado's Aggravating Circumstances Scheme

¶9 Colorado's felony sentencing statute, section 18-1.3-401, provides sentencing ranges for a trial court, and such ranges are premised on the specific class of felony for which a defendant is convicted. In this case, Mountjoy was convicted of three offenses:

(1) Reckless manslaughter, a class four felony with a presumptive range of two to six years imprisonment;

(2) Illegal discharge of a firearm, a class five felony with a presumptive range of one to three years imprisonment; and

(3) Tampering with physical evidence, a class six felony with a presumptive range of one year to eighteen months imprisonment.

¶10 A trial court, however, may sentence a defendant in excess of the presumptive range if the court concludes that extraordinary aggravating circumstances are present. In that instance, the trial court can impose a sentence greater than the maximum in the presumptive range; except that in no case shall the term of the sentence exceed twice the maximum authorized in the presumptive range. *See* § 18-1.3-401(6). Thus, the trial court here was authorized under section 18-1.3-401(6) to sentence Mountjoy to twelve years for reckless manslaughter, six years for illegal discharge of a firearm, and three years for tampering with physical evidence. The trial court's implementation of section 18-1.3-401(6), however, must have comported with the Sixth Amendment, which guarantees, among other rights, the right to a trial by an impartial jury.

## B. The Constitutionality of Colorado's Aggravating Circumstances Scheme

¶11 In 2000, the U.S. Supreme Court decided *Apprendi*, which held that the Sixth Amendment right to a jury trial prohibits courts from enhancing criminal sentences beyond the statutory maximum based on facts other than those found by a jury beyond a reasonable doubt. 530 U.S. at 490. The *Apprendi* Court noted a narrow exception to the jury-finding requirement—the fact of a prior conviction. *Id.*

¶12 Four years later, the Court applied *Apprendi* in the context of an aggravated sentencing guideline analogous to our section 18-1.3-401(6) in *Blakely*. 542 U.S. at 299, 301. Although the statute in *Blakely* did not specifically use the term "aggravating circumstances," it was functionally equivalent, providing that "[a] judge may impose a sentence above the standard range if he finds 'substantial and compelling reasons justifying an exceptional sentence.'" 542 U.S. at 299 (quoting Wash. Rev. Code § 9.94A.120(2) (2000)). In *Blakely*, the defendant pleaded guilty to the crime charged, and the judge, believing that the crime had been committed with "deliberate cruelty," imposed an exceptional sentence that exceeded the standard range. *Id.* at 298. The U.S. Supreme Court reviewed the constitutionality of that sentence.

¶13 The *Blakely* Court made two significant holdings regarding aggravated sentencing statutes. First, the Court held that for sentences based solely on the facts reflected in a conviction, the maximum sentence that a trial court may impose is the maximum of the presumptive range, not the aggravated range. *Id.* at 303–04 ("In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding

additional facts, but the maximum he may impose *without* any additional findings."). Thus, to aggravate a defendant's sentence under a sentence enhancing scheme such as the one in *Blakely* or our section 18-1.3-401(6), the trial court must rely on facts outside of the elements of the crime itself. Second, the *Blakely* Court held that any sentence beyond the presumptive range must comply with *Apprendi*, i.e., any additional fact that a trial court relies on to enhance a sentence—other than the existence of a prior conviction—must have been admitted by the defendant or found by a jury beyond a reasonable doubt. *Id.* at 303.

¶14     Applying these holdings, the *Blakely* Court found that the exceptional sentence imposed on the defendant violated *Apprendi* because the facts suggesting that deliberate cruelty had occurred were neither admitted by the defendant nor found by a jury. *Id.* Since the defendant in *Blakely* had pleaded guilty to the crime, the Court determined that the only facts admitted by the defendant were those that constituted the elements of the crime. *Id.* at 304. As a result, the Court held that the trial court could not have imposed a sentence outside of the standard range without pointing to an additional fact, and any such additional fact-finding would be subject to the Sixth Amendment jury-trial guarantee. *See Cunningham v. California*, 549 U.S 270, 271 (2007) (discussing *Blakely*). Notably, the Court determined that it was not the sentence enhancing scheme itself that violated *Apprendi*, but rather its implementation. *See Blakely*, 542 U.S. at 308. Hence, a judge may rely on facts outside of the elements of the crime itself that she deems are important to the exercise of her sentencing discretion, so long as a jury found (or the defendant admitted to) those facts. *Id.* at 303, 308–09.

¶15    We applied *Blakely* and *Apprendi* when we considered the constitutionality of section 18-1.3-401(6) in *Lopez*. We held that section 18-1.3-401(6) is constitutional under *Blakely* so long as an aggravated sentence is based on a fact additional to the elements of the crime that is one of four kinds of facts: (1) facts found by a jury beyond a reasonable doubt, (2) facts admitted by the defendant, (3) facts found by a judge after the defendant stipulates to judicial fact-finding for sentencing purposes, or (4) the fact of a prior conviction. *Lopez*, 113 P.3d at 719;[2] *see also Blakely*, 542 U.S. at 302–10. Facts fitting into the first three categories are considered *Blakely*-compliant, and facts fitting into the fourth category are considered *Blakely*-exempt. *Lopez*, 113 P.3d at 723. We further held that the trial court determines as a matter of law whether *Blakely*-compliant facts and *Blakely*-exempt facts constitute aggravating circumstances pursuant to section 18-1.3-401(6). *Id.* at 726 n.11.

¶16    One type of *Blakely*-compliant fact includes facts that constitute an element of a crime of a conviction—either by guilty plea or jury verdict—separate from the charge being aggravated. *See People v. Watts*, 165 P.3d 707, 709–12 (Colo. App. 2006) (holding that the facts inherent to a prior conviction can be *Blakely*-compliant as admissions by the

---

[2] Regarding the fourth category, we note that the *Lopez* court defined category four as "facts *regarding* prior convictions." 113 P.3d at 719 (emphasis added). But *Blakely* defines category four more narrowly as "the fact *of* a prior conviction." 542 U.S. at 302 (emphasis added) (quoting *Apprendi*, 530 U.S. at 490). We adopt the language of *Blakely* and in so doing recognize that the facts used to aggravate in *Lopez* were *Blakely*-compliant, not *Blakely*-exempt, because they were found by a jury beyond a reasonable doubt. *Id.* at 301.

defendant); *People v. Bass*, 155 P.3d 547, 550, 555 (Colo. App. 2006) (holding that aggravating facts can be found based on the element of a concurrent conviction). Accordingly, in order for Mountjoy's aggravated sentences to be constitutional, each sentence must be based on a fact outside of the conviction for which he was being sentenced, and that fact must have been either admitted by Mountjoy or found by a jury beyond a reasonable doubt. So, the specific question presented in this case is whether a sentence that is aggravated based on an element of a crime that arises out of the same criminal episode for which there is a separate conviction satisfies *Blakely* and *Apprendi*.

## C. Mountjoy's Assertions

¶17 Mountjoy contends that *Apprendi*, read alongside *United States v. Gaudin*, 515 U.S. 506 (1995), requires a jury to not only find specific facts beyond a reasonable doubt, but to also make the specific determination of whether these same facts actually constitute "extraordinary aggravating circumstances" when sentencing outside of the presumptive range. In *Gaudin*, the defendant was charged with making false statements of material fact on Department of Housing and Urban Development ("HUD") loan documents. *Id.* at 508. At trial, the district court instructed the jury that, although the government had to prove that the alleged false statements were material to HUD's activities and decisions, the issue of materiality was not for the jury to decide; rather the court told the jury that the court itself would determine materiality and that "the statements charged in the indictment are material statements." *Id.* at 508. The jury then found Gaudin guilty. *Id.* at 509.

10

¶18 The U.S. Supreme Court held that the trial court's refusal to submit the question of "materiality" to the jury, when materiality was an element of the crime charged, was unconstitutional because the Constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime charged. *Id.* at 522–23. Mountjoy contends that the "materiality" element of the crime in *Gaudin* is analogous to deciding whether facts are "aggravating" under section 18-1.3-401(6) here. Thus, Mountjoy asserts that, beyond *Apprendi*'s requirement that aggravating facts be found by a jury, *Gaudin* further requires that the jury must also determine whether those facts are indeed aggravating.

¶19 We conclude that Mountjoy's reliance on *Gaudin* is misplaced. *Gaudin* is fundamentally different from Mountjoy's case. His case is about sentencing; *Gaudin* is about proof of guilt. The judge in *Gaudin* made the determination of an actual element of the crime charged—materiality—meaning the jury failed to decide each and every element of the offense charged beyond a reasonable doubt. *Id.* at 508, 523. Here, "aggravation" is not an element of any of the crimes charged. Therefore, *Gaudin* is inapposite.[3] In fact, if *Gaudin* were as far-reaching as Mountjoy asserts, the *Blakely* Court would have held that a jury must determine beyond a reasonable doubt not only that

---

[3] Our conclusion that *Gaudin* is inapplicable here is supported by the fact that the U.S. Supreme Court does not reference *Gaudin* in *Blakely*. That omission is significant because the *Blakely* Court addressed a statute analogous to section 18-1.3-401(6) in light of *Apprendi*.

11

facts outside the elements of a conviction exist, but also that those facts themselves warrant an aggravated sentence. But it did not. Instead, *Blakely* held that a judge may aggravate a sentence based on facts outside of the elements of the crime, so long as a jury found (or the defendant admitted to) those facts. *Blakely*, 542 U.S. at 303, 309. Therefore, we conclude that *Gaudin* does not impact whether Mountjoy's sentences pass constitutional muster.

¶20 Next, Mountjoy argues that *Hurst v. Florida*, 136 S. Ct. 616 (2016), has "eroded" *Lopez*, calling into question the constitutionality of section 18-1.3-401(6). We disagree.

¶21 In *Hurst*, the defendant was convicted of first-degree murder, a capital felony, in Florida state court. *Id.* at 620. In Florida, a conviction for a capital felony, if based on no facts outside of the elements of the conviction, carried a maximum sentence of life in prison. *Id.* (citing Fla. Stat. § 755.082(1) (2010)). A sentence of life in prison, however, could be enhanced to a death sentence following an additional sentencing procedure. In the first phase of this procedure, the trial judge conducted an evidentiary hearing before a jury, and the jury rendered an advisory sentence of either life in prison or death without specifying the factual basis of the recommendation. *Id.* (citing Fla. Stat. § 921.141(1)–(2) (2010)). Notably, the jury would not make any factual determinations. After receiving the advisory sentence from the jury, in the second phase of the procedure, the trial judge would then weigh the aggravating and mitigating circumstances herself and decide whether to issue a death sentence and, if so, set forth in writing the facts she relied on for issuing the death sentence. *Id.* (citing Fla. Stat. § 921.141(3)).

¶22    In *Hurst*, the jury recommended the death penalty and per Florida's sentencing procedure did not state the facts that formed the basis for that recommendation. In following the Florida statute, the trial judge made her independent finding that heinous-murder and robbery aggravators existed and, therefore, sentenced Hurst to death. *Id.*

¶23    In reviewing that decision, the Supreme Court held that Hurst's death sentence violated the Sixth Amendment since the decision to impose a death sentence was made on factual determinations made by the trial judge, not the jury. *See id.* at 622 (explaining that although in Florida the jury recommends a sentence, "it does not make specific factual findings . . . and its recommendation is not binding on the trial judge"). Specifically, the sentencing scheme did "not require the jury to make the critical findings necessary to impose the death penalty. Rather, [the sentencing scheme] require[d] a judge to find these facts." *Id.* Mountjoy now argues that Colorado's aggravating sentencing statute operates like the statute in *Hurst*, and therefore *Hurst* effectively overruled *Lopez*. We conclude that *Hurst* had no effect on *Lopez*.

¶24    *Hurst* did not modify *Blakely* and *Apprendi*. Instead, it merely applied the bedrock principle of *Blakely* and *Apprendi* that the *facts* relied on to aggravate a sentence must be found by a jury beyond a reasonable doubt, and that a judge may aggravate a sentence based on such facts. *See id.* at 621 ("[A]ny *fact* that 'expose[s] the defendant to a greater punishment than that authorized by the jury's guilty verdict' . . . must be submitted to a jury." (alteration in original) (emphasis added) (quoting *Apprendi*, 530 U.S. at 494)). The issue in *Hurst* was that the jury recommendation failed to contain any factual findings, and the judge made a death sentence determination that was based on judge-found facts.

13

Contrary to Mountjoy's argument, nowhere in *Hurst* does the Court state that a jury, rather than a judge, must make the legal determination of whether facts found by a jury beyond a reasonable doubt warrant aggravation. If it had, the Court would have had to overrule *Blakely*. It did not. That is significant because, as previously noted, the statute in *Blakely* is functionally equivalent to the sentencing statute in question here. Accordingly, we conclude that since *Hurst* did not modify *Blakely* it does not influence our analysis in this case.

## D. Application

¶25 Each of Mountjoy's aggravated sentences is constitutionally sound because each is based on at least one *Blakely*-compliant fact. As to the conviction for reckless manslaughter, the trial court aggravated Mountjoy's sentence based on two facts: that he used a weapon and that he tampered with evidence. These facts are category one *Blakely*-compliant because the jury necessarily found them beyond a reasonable doubt when it found Mountjoy guilty of the other two offenses. That is, because the jury separately found Mountjoy guilty of illegal discharge of a firearm, the jury found beyond a reasonable doubt each element of that crime, one of which was the discharge of a firearm. Similarly, because the jury separately found Mountjoy guilty of the crime of tampering with evidence, it necessarily found beyond a reasonable doubt that he tampered with evidence.

¶26 As to the conviction for illegal discharge of a firearm, the trial court aggravated that conviction based on two facts that are category one *Blakely*-compliant. The fact that Mountjoy's firearm discharge resulted in a death is *Blakely*-compliant because the jury

14

found Mountjoy guilty of manslaughter and, therefore, found each element of manslaughter beyond a reasonable doubt, including that he caused the death of another person. Similarly, as previously noted, because the jury found Mountjoy guilty of the crime of tampering with evidence, it found beyond a reasonable doubt that he tampered with evidence.

¶27 Lastly, the aggravated sentence for the tampering with evidence conviction was based on the fact that the tampering was related to a death. Again, this is category one *Blakely*-compliant. As previously discussed, when the jury returned a guilty verdict for manslaughter, it found beyond a reasonable doubt that Mountjoy caused another's death.

¶28 Mountjoy points out that the jury did not specifically find these facts in connection with the crimes whose sentences the court ultimately aggravated; e.g., the jury did not find that Mountjoy used a gun as it related to the manslaughter charge. This is immaterial. *Lopez* and *Blakely* only require that aggravating facts be found by a jury beyond a reasonable doubt; they do not require any linkage between the aggravating fact and the crime whose sentence is subsequently aggravated.[4] *See Blakely*, 542 U.S. at 301; *Lopez*, 113 P.3d at 716.

---

[4] "The *Blakely* rule is concerned specifically with defendants' constitutional protections in criminal proceedings, particularly the right to a jury determination, beyond a reasonable doubt, that facts exist that expose the defendant to criminal penalties." *Lopez*, 113 P.3d at 726. Therefore, it only matters that a fact was determined by a jury, not that the jury found the fact with regard to a specific conviction, or even that it was the same jury who rendered the conviction. *See id.* at 730.

¶29 Notably, two facts relied on by the trial court to aggravate—that the vehicle had two occupants and that it was driving away—are neither *Blakely*-compliant nor *Blakely*-exempt. This does not influence our analysis, because the presence of one *Blakely*-compliant or *Blakely*-exempt fact renders an aggravated sentence constitutionally sound even if the sentencing judge also considered facts that were not *Blakely*-compliant or *Blakely*-exempt. *Lopez*, 113 P.3d at 731; *see also Bass*, 155 P.3d at 555.

## IV. Conclusion

¶30 For the foregoing reasons, we affirm the judgment of the court of appeals on other grounds.

**JUSTICE GABRIEL** dissents, and **JUSTICE HART** joins in the dissent.

16

JUSTICE GABRIEL, dissenting.

¶31    The majority concludes that the trial court did not deny petitioner Christopher Mountjoy's rights to due process and trial by jury when it aggravated his sentence based on facts that the jury found beyond a reasonable doubt when it convicted him of the underlying charges. *See* maj. op. ¶ 2. Because I believe that the majority's conclusion is inconsistent with the principles set forth in *Blakely v. Washington*, 542 U.S. 296 (2004), *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *United States v. Gaudin*, 515 U.S. 506 (1995), and because I cannot say that the trial court's constitutional sentencing error was harmless beyond a reasonable doubt, I respectfully dissent.

## I. Factual Background

¶32    The majority sets forth the pertinent facts and procedural history, and I need not repeat its recitation here. I would add, however, that the People never alleged in their pleadings in this case that the crimes at issue were subject to any sentence enhancers or aggravators. Nor did the People in any way suggest to the jurors that the existence of sentence aggravators was an issue before them. To the contrary, the People first gave notice of their intent to seek aggravated-range sentencing *after* the jury had entered its verdict. In these circumstances, it is difficult for me to see how the aggravated-range sentences that the trial court imposed in this case could have complied with *Blakely* and *Apprendi*, which, as pertinent here, required the jury to find beyond a reasonable doubt the facts supporting the sentence aggravators.

1

## II. Analysis

¶33 I begin by setting forth the applicable law and conclude that Mountjoy's aggravated-range sentences were imposed in violation of *Blakely*, *Apprendi*, and *Gaudin*. I then address whether this constitutional error was harmless beyond a reasonable doubt and conclude that it was not.

## A. Applicable Principles of Aggravated-Range Sentencing

¶34 The Supreme Court has held that, except for the fact of a prior conviction, "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt," unless the defendant has either stipulated to the relevant facts or consented to judicial fact-finding. *Blakely*, 542 U.S. at 301, 310; *Apprendi*, 530 U.S. at 488, 490. A "statutory maximum" is "the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Blakely*, 542 U.S. at 303.

¶35 For purposes of this analysis, no constitutionally significant difference exists between a fact that is an element of a crime and one that is a sentencing factor. *See S. Union Co. v. United States*, 567 U.S. 343, 358–59 (2012) (noting that the Government's argument "rest[ed] on an assumption that *Apprendi* and its progeny have uniformly rejected: that in determining the maximum punishment for an offense, there is a constitutionally significant difference between a fact that is an 'element' of the offense and one that is a 'sentencing factor'"); *Washington v. Recuenco*, 548 U.S. 212, 220 (2006) ("[W]e have treated sentencing factors, like elements, as facts that have to be tried to the jury and proved beyond a reasonable doubt."); *Apprendi*, 530 U.S. at 478, 482–84 (same).

2

¶36 Moreover, a factual question is not to be taken away from the jury merely because it requires the jury to apply the applicable law to the facts presented. *See Gaudin*, 515 U.S. at 511–12. Thus, in *Gaudin*, the Supreme Court rejected the Government's assertions that (1) "materiality" for purposes of the charge of making material false statements in a matter within the jurisdiction of a federal agency is a "legal" question for the court and (2) the requirement that the jury decide all elements of a criminal offense applies only to the factual components of the essential elements. *Id.* at 511.

¶37 In *Gaudin*, the Government had argued that deciding whether a statement was "material" required the determination of two underlying questions of historical fact, namely, "what statement was made?" and "what decision was the agency trying to make?" *Id.* at 512. The Government had further contended that the ultimate question in the case, i.e., "whether the statement was material to the decision," required the application of the legal standard of materiality to the historical facts. *Id.* The Government asserted that the two underlying questions were to be decided by the jury while the ultimate question was for the court. *Id.*

¶38 The Supreme Court rejected this argument for two reasons. First, the Court observed that "the application-of-legal-standard-to-fact sort of question . . . , commonly called a 'mixed question of law and fact,' has typically been resolved by juries." *Id.* Second, the Court stated that the Government's position had "absolutely no historical support." *Id.*

¶39 Turning to the facts of this case, I note that section 18-1.3-401(6), C.R.S. (2018), sets forth the sentencing aggravator here at issue. That provision allows a court to impose a

sentence greater than the presumptive range only if the court finds "extraordinary . . . aggravating circumstances." *Id.*

¶40   In my view, this statute makes clear that the sentencing enhancer at issue is the existence of "extraordinary . . . aggravating circumstances," not, as the majority states, whether a person died, the defendant used a weapon, or the defendant tampered with evidence. *See* maj. op. ¶¶ 25–28. Accordingly, under the principles set forth in *Blakely*, *Apprendi*, and *Gaudin*, the existence of extraordinary aggravating circumstances was the fact that the jury was required to find, and it is undisputed that it did not do so here. In reaching this conclusion, I am unpersuaded by the People's argument that the trial court properly made the determination regarding the existence of extraordinary aggravating circumstances because the existence of such circumstances presented a legal issue requiring the application of law to facts. As noted above, *Gaudin* expressly rejected such an argument. *See Gaudin*, 515 U.S. at 511–12.

¶41   Nor am I persuaded by the People's argument, which the majority adopts, maj. op. ¶ 19, that *Gaudin* is distinguishable because it concerned an element of the offense and proof of guilt, whereas here we are dealing with sentencing aggravation. This argument ignores the fact, noted above, that the Supreme Court has long and consistently rejected any distinction between an element of an offense and a sentencing factor. *See, e.g., S. Union Co.*, 567 U.S. at 358–59; *Recuenco*, 548 U.S. at 220; *Apprendi*, 530 U.S. at 478, 482–84.

¶42   Finally, I recognize that, in *Lopez v. People*, 113 P.3d 713, 726 n.11 (Colo. 2005), we concluded that the determination of extraordinary aggravating circumstances "is a

4

conclusion of law that remains within the discretion of the trial court if it is based on *Blakely*-compliant or *Blakely*-exempt facts." We so concluded without ever mentioning *Gaudin*, and, for the reasons set forth above, I believe that this conclusion was directly contrary to *Gaudin* and, therefore, should be overruled.

¶43 For these reasons, unlike the majority, I would conclude that Mountjoy's aggravated-range sentences were imposed in violation of *Blakely*, *Apprendi*, and *Gaudin* and that the trial court therefore committed constitutional error in imposing those sentences.

## B. Harmless Error

¶44 My foregoing conclusion does not end my analysis because I must next determine whether the constitutional error at issue was harmless.

We review preserved constitutional trial errors, like that at issue here, for constitutional harmless error. *Hagos v. People*, 2012 CO 63, ¶ 11, 288 P.3d 116, 119. Such errors require reversal unless we can say that the error was harmless beyond a reasonable doubt. *Id.* Accordingly, we will reverse if we conclude that there is a reasonable possibility that the error might have contributed to the judgment. *Id.*

¶45 Here, the People did not allege in their pleadings in this case that the crimes at issue were subject to any sentence enhancers or aggravators. Nor was the jury given an opportunity to decide whether facts existed to support a sentence enhancement. Instead, the People first gave notice of their intent to seek aggravated-range sentencing *after* the jury had entered its verdict. Thus, what the jury would have done had it been asked to determine the existence of a sentence aggravator is speculative at best.

5

¶46    In addition, although the majority concludes that extraordinary aggravating circumstances were established by the fact that the jury found the elements of the crimes presented to them, *see* maj. op. ¶¶ 25–28, it is not at all clear to me that the jury would have found that mere proof of the elements of the crimes presented would have constituted *extraordinary* aggravating circumstances.    To me, by definition, "extraordinary" suggests something beyond proof of the crimes themselves.

¶47    In perceiving reversible error in this case, I am persuaded by the Washington Supreme Court's analysis in *In re Personal Restraint of Hall*, 181 P.3d 799, 800–03 (Wash. 2008), in which the court considered an aggravated sentencing statute like that at issue here.  In *Hall*, the trial court sentenced the defendant to an aggravated-range sentence under a Washington statute allowing for the imposition of an "exceptional sentence" if the trial court found that "substantial and compelling reasons" justified such a sentence. *See id.* at 800, 802 (quoting former Wash. Rev. Code § 9.94A.120(2) (1995), *recodified and amended as* Wash. Rev. Code § 9.94A.535 (2016)).  The *Hall* court began by recognizing that the trial court had violated *Blakely* and *Apprendi* when it, rather than a jury, determined that "substantial and compelling reasons" existed for the imposition of an exceptional sentence.  *Id.* at 800.  The court then proceeded to address whether the error was harmless and concluded that it was not because, under the sentencing statute at issue, "no procedure existed whereby the jury could have been asked to find aggravating circumstances." *Id.*

¶48    Here, as in *Hall*, the jury was never given any opportunity to consider whether extraordinary aggravating circumstances existed to justify the imposition of a sentence

6

beyond the statutory maximum. As a result, Mountjoy was denied his constitutional right to have a jury make the finding of extraordinary aggravating circumstances to which he was entitled. Accordingly, I cannot say that the constitutional error here was harmless beyond a reasonable doubt.

## III. Conclusion

¶49 For the foregoing reasons, I believe that the aggravated-range sentences that Mountjoy received, which sentences were imposed without ever having had a jury consider whether extraordinary aggravating circumstances existed in this case, violated the principles set forth in *Blakely*, *Apprendi*, and *Gaudin*. I further believe that this constitutional error was not harmless beyond a reasonable doubt. I therefore would reverse Mountjoy's aggravated-range sentences and remand this case for the imposition of constitutionally valid sentences.

¶50 Accordingly, I respectfully dissent.

I am authorized to state that JUSTICE HART joins in this dissent.